# Exhibit D

FILED
2025 AUG 05 04:17 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-22669-7 SEA

IN THE SUPERIOR COURT FOR THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| JANE DOE, on behalf of herself and all others similarly situated, | NO. |
|---|---|
| Plaintiffs, | CLASS ACTION COMPLAINT |
| v. | |
| OVERLAKE HOSPITAL MEDICAL CENTER, | |
| Defendant. | |

Plaintiff Jane Doe ("Plaintiff") brings this class action on behalf of herself and all others similarly situated (the "Class Members") against Defendant Overlake Hospital Medical Center ("Overlake" or "Defendant"). Defendant owns and controls https://www.overlakehospital.org (the "Website"), and all related webpages and utilizes an app called MyChart to connect its patients with a patient portal (collectively, the "Web Properties"). Plaintiff's allegations are based upon personal knowledge as to her own actions, her counsel's investigation, and upon information and belief as to all other matters, as follows:

1.    Plaintiff brings this case to address Defendant's illegal and widespread practice of disclosing Plaintiff's and Class Members' confidential personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private

CLASS ACTION COMPLAINT - 1

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Information") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook") and Google, Inc. ("Google"), without the consent of the Plaintiff or Class Members. The Private Information that was shared and disclosed included medical conditions, symptoms, treatments, and other information that was provided to Defendant pursuant to a confidential hospital-patient relationship.

2.      Defendant offers healthcare to its patients via its Web Properties. These Web Properties also allow patients to connect with doctors and other healthcare services including paying bills, searching for providers, booking appointments, and logging in to Overlake's MyChart Patient Portal.

3.      Overlake's patients communicate their private information via the site, including details about their medical conditions and treatments.

4.      Overlake owns and controls the Web Properties, which it encouraged Plaintiff and other patients to use for: (1) coordinating their care; (2) obtaining information about their upcoming treatments and health services; (3) making online payments; (4) scheduling appointments; and (5) researching their medical symptoms, treatments, and/or conditions.

5.      In doing so, and by designing its Web Properties in the manner described throughout this Complaint, Overlake knew or should have known that its patients would use the Web Properties to communicate Private Information in conjunction with obtaining and receiving medical services and insurance from Defendant.

6.      By installing and using Tracking Technologies on its Web Properties, Overlake effectively planted a bug on Plaintiff's and Class Members' web browsers and devices, which caused their communications to be intercepted, accessed, viewed and captured by third parties in real time, as they were communicated by patients, based on Overlake's chosen parameters.

CLASS ACTION COMPLAINT - 2

7. For example, Overlake used the Meta Pixel, which tracks the people and the type of actions they take in real time as they interact with a website, including the exact text and phrases that patients typed into various portions of the Web Properties. Operating as designed and as implemented by Overlake, the Meta Pixel and other Tracking Tools caused Plaintiff's and Class Members' Private Information to be unlawfully intercepted and surreptitiously disclosed to third parties.

8. In addition to the Meta Pixel, Defendant's Tracking Tools include Google LLC's Google Tag Manager and Google Analytics tools, which track and collect Website users' communications with Defendant via the Website and surreptitiously force the user's web browser to send those communications to undisclosed third parties, such as Google.

9. The Office for Civil Rights at HHS has issued a Bulletin to highlight the obligations of HIPAA covered entities and business associates ("regulated entities") under the HIPAA Privacy, Security, and Breach Notification Rules ("HIPAA Rules") when using online tracking technologies ("tracking technologies"), such as the Tracking Technologies.[1] The Bulletin expressly provides (in bold type) that "**[r]egulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules.**"[2] In other words, HHS has expressly stated that Overlake's implementation of Tracking Technologies violates HIPAA Rules.

10. The information Overlake divulged to unauthorized third parties—Meta, Google, and others—allowed those entities to learn that specific individuals were patients seeking and receiving treatment at Overlake's clinics and other medical centers. In turn, this

---

[1] *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (Dec. 1, 2022), available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited Jul. 15, 2025).

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  information was used and/or sold to additional unauthorized parties for use in marketing and

2  geotargeting.

3      11.    Patients simply do not anticipate that their trusted healthcare and insurance

4  provider will send their Private Information to social media and marketing companies for future

5  exploitation and targeted marketing.

6      12.    Neither Plaintiff nor any other Class Member signed a written authorization

7  permitting Overlake to send their Private Information to Meta, Google, or any other third party.

8
9      13.    Similarly, Overlake does not have a HIPAA-compliant Business Associate

10  Agreement in place with Meta or Google.

11      14.    As a healthcare provider, Overlake is required by law to provide every patient

12  with a Notice of Privacy Practices. In its Notice of Privacy Practices, Overlake states that it is

13  "required by law to maintain the privacy of your [Patient's] health information."[3]

14
15      15.    Despite Overlake's promise to maintain the privacy of its patients' sensitive

16  health information, Overlake nevertheless intentionally chose to embed the Meta and Google

17  trackers on its Web Properties, sharing Plaintiff's and Class Members' sensitive health

18  information with Meta and Google without their consent when they communicated with

19  Overlake's Web Properties.

20      16.    The disclosure of Plaintiff's and Class Members' sensitive health information

21  enabled Meta and Google to gain intimate insight into the types of medical care and medical

22  treatments patients sought from Overlake.

23
24
25  [2] *Id.* (emphasis in original).

26  [3] *Notice of Privacy Practice,* https://www.overlakehospital.org/notice-of-privacy-practices (last visited July 10, 2025).

CLASS ACTION COMPLAINT - 4

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

17.    As described in this Complaint, Overlake did not reasonably protect, secure, or store Plaintiff's and Class Members' sensitive health information, but rather intentionally and knowingly granted Meta and Google access to their confidential information.

18.    Overlake's actions constitute a reckless disregard for the privacy of patients' sensitive health information and its duties as a healthcare provider, an extreme invasion of Plaintiff's and Class Members' right to privacy, and a violation of state statutory and common law.

## I.    PARTIES

***Plaintiff Jane Doe***

19.    Plaintiff Doe is a natural person and citizen of King County, Washington, where she intends to remain.

20.    She is a current patient of Overlake and has paid for and received medical treatment from Defendant on a recurring basis since approximately 2006, primarily at the Overlake Medical Center location in Bellevue, Washington.

21.    Throughout her patient relationship with Defendant, Plaintiff accessed and utilized Defendant's website via her smartphone and personal laptop as part of her medical care provided by Defendant.

22.    Plaintiff has a history of cardiovascular issues and was treated by a vascular specialist, Dr. Renee Minjarez, in relation to deep vein thrombosis. In 2019, Plaintiff was taken to Defendant's emergency room for a vascular issue and underwent a vascular surgery performed by Dr. Daniel Pepper in connection with that ER visit. Additionally, throughout 2019 and 2020, Plaintiff Doe received treatment from Defendant related to a hormonal breakdown after experiencing several medical symptoms. In the course of her diagnosis and

CLASS ACTION COMPLAINT - 5

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

treatment, Plaintiff used the Website extensively.

23.    More specifically, Plaintiff used the Website to complete the following tasks: (1) research her medical conditions and symptoms via the search bar on Defendant's Website, including the phrase "passing out," (2) identify treatment options available to her at one of Defendant's centers, (3) pay bills directly through the Website, (4) research particular specialists, including a gastroenterologist, an OB/GYN, an endocrinologist, a cardiologist, a hematologist, and a vascular surgeon, (5) call the medical specialists via the telephone link provided on the Website page for the particular provide to book appointments, and (6) access or otherwise communicate her sensitive healthcare information. Plaintiff also regularly used the Website to log in to Defendant's MyChart patient portal, through which she communicated with her medical providers, reviewed messages related to her medical care and conditions, and reviewed test results

24.    In doing so, she communicated her PHI, including her specific medical symptoms and conditions, the fact that she was booking appointments, and the fact that she was seeking and received medical treatment from a gastroenterologist, OB/GYN, endocrinologist, cardiologist, hematologist, and vascular surgeon on multiple occasions.

25.    As a result of using the Website in the manner described above, and pursuant to the systematic process described herein, unauthorized third parties obtained Plaintiff's private communications and PHI. The specific information Facebook and Google received revealed Plaintiff's specific medical symptoms and conditions and the fact that she was seeking and received medical treatment from Defendant.

26.    Plaintiff has had a Facebook account since approximately 2001 and has regularly used the platform since creating her account. Plaintiff also has an Instagram account

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

that she has used regularly for at least the past five years. Plaintiff accesses each of these accounts multiple times every week. Plaintiff also has a Google account.

27.    Plaintiff primarily accesses her Facebook, Instagram, and Google accounts via her smartphone and personal laptop, both of which she used to access Defendant's Website.

28.    Pursuant to the systematic process described herein, Plaintiff's Private Information was disclosed to Facebook, and this data included her PII, PHI, and related confidential information. Specifically, Plaintiff has communicated her name, date of birth, address, phone number, email address, insurance information, medical history, medical symptoms, and payment information through Defendant's digital platform. Defendant intercepted and/or assisted these interceptions without Plaintiff's knowledge, consent, or express written authorization. By failing to receive the requisite consent, Defendant breached confidentiality and unlawfully disclosed Plaintiff's Private Information.

29.    As Defendant's patient, Plaintiff Doe reasonably expected that her online communications with Defendant were solely between herself and Defendant and that such communications would not be transmitted or intercepted by a third party. Plaintiff also relied on Defendant's Privacy Policies in reasonably expecting Defendant would safeguard her Private Information. But for her status as Defendant's patient and Defendant's Privacy Policies, Plaintiff would not have disclosed her Private Information to Defendant.

30.    Plaintiff is a private person and strongly safeguards the privacy of her medical diagnosis and treatment information, and particularly the care she received in 2019 and 2020. She has not publicly posted about her medical diagnosis or treatment in 2019 and 2020 anywhere online and did not broadcast that information via any other methods. Despite her best attempts to keep her experiences private, the details of her care were divulged by Defendant via

CLASS ACTION COMPLAINT - 7

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

the Tracking Tools.

31.     During her time as a patient, Plaintiff Doe never consented to the use of her Private Information by third parties or to Defendant enabling third parties, including Facebook and Google, to receive, access or interpret such information for marketing or any other purpose.

32.     Notwithstanding, through the Tracking Pixel and Conversions API, Defendant transmitted Plaintiff Doe's Private Information to third parties, such as Facebook and Google.

33.     Directly after using Defendant's Website in relation to her hormonal breakdown, Plaintiff saw targeted advertisements on her Facebook and Instagram accounts advertising mental health care, hormone treatment therapies, and birth control.

34.     These advertisements consistently appeared following Plaintiff's use of Defendant's website in connection with her treatment and diagnosis of her private medical condition.

35.     The timing and specificity of these advertisements, coupled with the fact that they are directly related to the medical conditions and symptoms she communicated via the Website and received treatment for, leads her to believe that Facebook, Instagram, and other unauthorized third parties received her Private Information via Defendant's Website.

36.     The disclosure of Plaintiff's healthcare information, particularly information that she kept strictly private relating to her hormonal breakdown and the surrounding symptoms, treatments, and appointments, has caused Plaintiff significant injury. This wanton disclosure of such personal information would be highly offensive to the typical person, as it is to Plaintiff.

### Defendant Overlake Medical Center

37.     Defendant Overlake is a nonprofit healthcare organization, headquartered at 1035 116th Ave NE, Bellevue, Washington 98004.

CLASS ACTION COMPLAINT - 8

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

38.    Defendant is one of the largest nonprofit hospital systems in the country, operating a 349-bed hospital and over 1,300 affiliated providers on its medical staff, including more than 300 physicians and advanced-practice providers who are employed by the organization.

39.    Defendant is a covered entity under the Health Insurance Portability and Accountability Act of 1996 (42 U.S.C. § 1320d and 45 C.F.R. Part 160-45 C.F.R. Part 162, and 45 C.F.R. Part 164 "HIPAA").

## II.    JURISDICTION & VENUE

40.    This Court has jurisdiction over all causes of action alleged herein pursuant to Wash. Rev. Code Ann. § 2.08.010.

41.    Venue is proper in King County Superior Court pursuant to Wash. Rev. Code Ann. § 4.12.020 because Defendant is located in and conducts business in King County, Washington.

## III.    COMMON FACTUAL ALLEGATIONS

**Background**

*Meta's Business Tools and the Pixel*

42.    Meta operates the world's largest social media company and generated $117 billion in revenue in 2021, roughly 97% of which was derived from selling advertising space.[4]

43.    In conjunction with its advertising business, Meta encourages and promotes entities and website owners, such as Defendant, to utilizes its "Business Tools" to gather, identify, target, and market products and services to individuals.

---

[4] *Facebook, Meta Reports Fourth Quarter and Full Year 2021 Results*, https://investor.fb.com/investor-news/press-release-details/2022/Meta-Reports-Fourth-Quarter-and-Full-Year-2021-Results/default.aspx.

CLASS ACTION COMPLAINT - 9

44.     Meta's Business Tools, including the Pixel and Conversions API, are bits of code that advertisers can integrate into their webpages, mobile applications, and servers, thereby enabling the interception and collection of mobile app and website visitors' activity.

45.     One such Business Tool is the Pixel, which "tracks the people and type of actions they take."[5] When a user accesses a webpage hosting the Pixel, their communications with the host webpage are instantaneously and surreptitiously duplicated and sent to Meta's servers.

46.     Notably, these transmissions to Meta do not occur unless the webpage or mobile app contains the Meta Pixel or another Meta Business Tool. Stated differently, Plaintiff's and Class Members' Private Information would not have been disclosed to Meta but for Overlake's decision to install and use Meta Business Tools on its Web Properties.

47.     These secret transmissions to Meta are initiated by Overlake's source code concurrently with Plaintiff's and Class Members' communications to their intended recipient, Overlake.

***Google Analytics and Tracking Technologies***

48.     Third parties, like Google, offer Tracking Tools as software that advertisers can integrate into their webpages, mobile applications, and servers, thereby enabling the interception and collection of user communications and activity on those platforms. The Tracking Tools are used to gather, identify, target, and market products and services to individuals.

49.     In general, Tracking Tools are automatically configured to capture "Standard Events" such as when a user visits a particular webpage, that webpage's URL and metadata,

---

[5] RETARGETING, https://www.facebook.com/business/goals/retargeting.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    button clicks, etc. Advertisers, such as Defendant, can track other user actions and

2    communications and can create their own tracking parameters by customizing the software on

3    their website.

4         50.    When a user accesses a webpage that is hosting Tracking Tools, the user's

5    communications with the host webpage are instantaneously and surreptitiously duplicated and

6    sent to the third party. For example, the Google Analytics tool on Defendant's Website causes

7    the user's web browser to instantaneously duplicate the contents of the communication with the

8    Website and send the duplicate from the user's browser directly to Google Analytics server.

9         51.    Google Analytics tracks what a user communicates to Defendant's website.[6]

10        52.    Notably, transmissions only occur on webpages that contain Tracking Tools.[7]

11   Thus, Plaintiff's and Class Member's Private Information would not have been disclosed to

12   Google via this technology but for Defendant's decisions to install the Tracking Tools on its

13   Website.

14        **Overlake Disclosed Plaintiff's and Class Members' Protected Health Information**
15        **and Assisted with Intercepting Communications.**

16        53.    Web browsers are software applications that enable consumers to browse the

17   web, and view and exchange electronic information and communications over the Internet.

18   Each "client device," (such as a computer, tablet, or smart phone) accesses web content through

19   a web browser (e.g., Google's Chrome browser, Mozilla's Firefox browser, Apple's Safari

20

21   _____

22   [6] *Comparing Google Analytics vs Facebook Pixel*, Boltic, https://www.boltic.io/blog/google-analytics-vs-facebook-

23   pixel#:~:text=Google%20Analytics%20is%20a%20comprehensive,time%20on%20site%2C%20and%20conversio
     ns.&text=On%20the%20other%20hand%2C%20Facebook,user%20actions%20on%20your%20website (last
     visited Jan. 26, 2024).

24   [7] Defendant's Google Analytics tool stores a client ID in a first-party cookie named _ga (also identified as a cid) to
25   distinguish unique users and their sessions on your website. Analytics doesn't store the client ID when analytics
     storage is disabled through Consent Mode."
26   https://support.google.com/analytics/answer/11593727?hl=en#:~:text=Google%20Analytics%20
     stores%20a%20client,is%20disabled%20through%20Consent%20Mode. (last visited Jul. 15, 2025).

CLASS ACTION COMPLAINT - 11

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

browser, or Microsoft's Edge browser).

54.    Every website is hosted by a computer "server" that holds the website's contents and through which the entity in charge of the website exchanges communications with Internet users' client devices via their web browsers.

55.    Web communications consist of HTTP or HTTPS Requests and HTTP or HTTPS Responses, and any given browsing session may consist of thousands of individual HTTP Requests and Responses, along with corresponding cookies:

- **HTTP Request**: an electronic communication sent from the client device's browser to the website's server. GET Requests are one of the most common types of HTTP Requests. In addition to specifying a particular URL (i.e., web address), GET Requests can also send data to the host server embedded inside the URL, and can include cookies. POST Requests can send a large amount of data outside of the URL. (For instance, uploading a PDF for filing a motion to a court).

- **Cookies**: a small text file that can be used to store information on the client device which can later be communicated to a server or servers. Cookies are sent with HTTP Requests from client devices to the host server. Some cookies are "third-party cookies," which means they can store and communicate data from visiting one website to an entirely different website.

- **HTTP Response**: an electronic communication that is sent as a reply to the client device's web browser from the host server in response to an HTTP Request. HTTP Responses may consist of a web page, another kind of file, text information, or error codes, among other data.[8]

56.    A patient's HTTP Request essentially asks the Defendant's Website to retrieve certain information (such as "Book an Appointment" page). The HTTP Response sends the requested information in the form of "Markup." This is the foundation for the pages, images, words, buttons, and other features that appear on the patient's screen as they navigate Defendant's Website.

57.    Every website is comprised of Markup and "Source Code." Source Code is

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  simply a set of instructions that commands the website visitor's browser to take certain actions

2  when the web page first loads or when a specified event triggers the code.

3      58.    Source code may also command a web browser to send data transmissions to

4  third parties in the form of HTTP Requests quietly executed in the background without

5  notifying the web browser's user. Defendant's Pixel is source code that does just that.

6      59.    The Pixel acts like a wiretap. When patients visit Defendant's website via an

7  HTTP Request to Overlake's server, Defendant's server sends an HTTP Response including

8  the Markup that displays the Webpage visible to the user and Source Code including

9  Defendant's Pixel. In essence, Defendant is handing its patients a "tapped phone." Once the

10 webpage is loaded onto the patients' browser, a covert software-based wiretap is silently

11 activated, waiting for private communications on the webpage to initiate the interception. These

12 intercepted communications, intended solely for Defendant, are then transmitted to third

13 parties, including Facebook and Google.

14

15     60.    Third parties, such as Facebook and Google, implant third-party cookies into the

16 web browser of users who are logged into their services on the same device. These cookies

17 serve the purpose of uniquely identifying the user and are included with each intercepted

18 communication. By doing so, the third party can accurately identify the patient associated with

19 interception Personal Information.

20

21     61.    With substantial work and technical know-how, internet users can sometimes

22 circumvent this browser-based wiretap technology. This is why third parties bent on gathering

23 Personal Information, like Facebook, implement workarounds that even savvy users cannot

24 evade. Facebook's workaround is called Conversions API. Conversions API is an effective

25

26

---

[8] One browsing session may consist of hundreds or thousands of individual HTTP Requests and HTTP Responses.

CLASS ACTION COMPLAINT - 13

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

workaround because it does the transmission from their own servers and does not rely on the user's web browsers. Conversions API "is designed to create a direct connection between [Web hosts'] marketing data and [Facebook]." Hence, the interactions between patients and Defendant, which are essential for using Defendant's Website, are effectively received and stored on Defendant's server. Subsequently, the Conversions API directly retrieves and transmits the Private Information present in those interactions from Defendant to Facebook. Client devices do not have access to host servers and thus cannot prevent (or even detect) this transmission.

62.     While there is no way to confirm with certainty that a Web host like Defendant has implemented workarounds like Conversions API without access to the host server, companies like Facebook instruct Defendant to "[u]se the Conversions API in addition to the [] Pixel, and share the same events using both tools," because such a "redundant event setup" allows Defendant "to share website events [with Facebook] that the pixel may lose."[9] Thus, it is reasonable to infer that Facebook's customers who implement the Facebook Pixel in accordance with Facebook's documentation will also implement the Conversions API workaround.

63.     The third parties to whom a website transmits data via pixels and similar methods do not contribute significant content pertaining to the user's communications. Rather, these third parties are commonly engaged to monitor user data and communications for the website owner's marketing objectives, primarily aimed at enhancing profitability.

64.     Thus, without any knowledge, authorization, or action by a user, a website

---

[9]    *See Best Practices For Conversions API*, Meta Business Help Center, https://www.facebook.com/business/help/308855623839366?id=818859032317965.

CLASS ACTION COMPLAINT - 14

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

owner like Defendant can use its source code to commandeer the user's computing device, causing the device to contemporaneously and invisibly transmit the users' communications to third parties.

65.    In this case, Defendant employed the Tracking Pixel and Conversions API tools to intercept, duplicate, and re-direct Plaintiff's and Class Members' Private Information to Facebook.

66.    For example, when a patient visits www.overlakehospital.org and selects the "Book an Appointment" button, the patient's browser automatically sends an HTTP Request to Defendant's web server. Defendant's web server automatically returns an HTTP Response, which loads the Markup for that particular webpage. As depicted below, the user only sees the Markup, not Defendant's Source Code or underlying HTTP Requests and Responses. Additionally, it is to be noted that upon clicking the "Book an Appointment" button, patients are re-directed to a separate page with a different HTTP address: overlakehospital.org/visit/virtual-care.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



*Figure 1 The image above is a screenshot taken from the user's web browser upon visiting overlakehealth.org (last accessed 18 July 2023).*

67.    The Facebook Tracking Pixel is embedded in Defendant's Source Code contained in its HTTP Response. The Pixel, programmed to automatically track and transmit the patient's communications with Defendant's Website to Facebook, executes instructions that effectively open a hidden spying window into the patient's browser through which Facebook can intercept the visitor's data, actions, and communications with Defendant.[10]

68.    Defendant's Source Code manipulates the patient's browser by secretly instructing it to duplicate the patient's communications (HTTP Requests) with Defendant and to send those communications to Facebook. These transmissions occur contemporaneously, invisibly, and without the patient's knowledge.

---

[10] When used in the context of a screen or visual display, a "pixel" is the smallest unit in such a digital display. An image or video on a device's screen can be made up of millions of individual pixels. The Facebook Pixel is a tiny image file that is so small as to be invisible to website users. It is purposefully designed and camouflaged in this manner so that website users remain unaware of it.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

69.     Thus, without its patients' consent, Defendant has effectively used its source code to commandeer and "bug" or "tap" it patients' computing devices, allowing Facebook and other third parties to listen in on all of their communications with Defendant and thereby intercept those communications, including Private Information.

70.     Consequently, when Plaintiff and Class Members visit Defendant's website and communicate their Private Information, including, but not limited to, button clicks and selections, and text typed into search bar including conditions, symptoms, and treatments, third parties like Facebook receive the information.

### *Defendant Disclosed Plaintiff's and Class Members' Private Information to Facebook Using the Pixel and/or Conversions API Tracking Practices*

71.     Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API ("First Party cookies") on its Website and servers to secretly track patients by recording their activity and experiences in violation of its common law, contractual, statutory, and regulatory duties and obligations.

72.     Defendant's Pixel has its own unique identifier (represented as id=712682029240809), which can be used to identify which of Defendant's webpages contain the Pixel.

73.     The Pixel allows Defendant to optimize the delivery of ads, measure cross-device conversions, create custom audiences, and decrease advertising and marketing costs. However, Defendant's Website does not rely on the Pixel in order to function.

74.     While seeking and using Defendant's services as a medical provider, Plaintiff and Class Members communicated their Private Information to Defendant via its Website.

CLASS ACTION COMPLAINT - 17

75.    Plaintiff and Class Members were not informed that their Private Information would be shared with Facebook when they communicated it to Defendant, primarily due to Defendant's failure to disclose this fact, among other reasons.

76.    Plaintiff and Class Members never consented, agreed, or otherwise permitted Defendant to disclose their Private Information to Facebook. Furthermore, they did not have any intention for Facebook to be involved in their communications with Defendant, which often contained highly sensitive and confidential information.

77.    Defendant's Pixel and First-Party cookies sent non-public Private Information to Facebook, including but not limited to Plaintiff's and Class Members': (1) health conditions; (2) desired medical treatment or therapies; and (3) phrases and search queries (such as searches for symptoms, treatment options, or types of providers).

78.    Importantly, the Private Information Defendant's Pixel sent to Facebook was sent alongside the Plaintiff's and Class Members' Facebook ID (c_user cookie or "FID"), thereby allowing individual patients' communications with Defendant, and the Private Information contained in those communications, to be linked to their unique Facebook accounts and therefore their identity.[11]

79.    A user's FID is associated with their personal Facebook profile, which typically includes various demographic and personal information about the user. This information can encompass details such as location, photos, personal interests, employment history, relationship status, and other relevant particulars. Because the user's Facebook ID uniquely identifies an individual's Facebook account, Facebook—or any ordinary person—can easily use the

---

[11] Defendant's Website track and transmit data via first-party and third-party cookies. The c_user cookie or FID is a type of third-party cookie assigned to each person who has a Facebook account, and it is comprised by a unique and persistent set of numbers.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Facebook ID to locate, access, and view the user's corresponding Facebook profile quickly and easily.

80.    Defendant deprived Plaintiff and Class Members of their privacy rights when it: (1) implemented technology (i.e., the Facebook Pixel and First Party cookies) that surreptitiously tracked, recorded, and disclosed Plaintiff's and other online patients' confidential communications and Private Information; (2) disclosed patients' protected information to Facebook—an unauthorized third-party; and (3) undertook this pattern of conduct without notifying Plaintiff or Class Members and without obtaining their express written consent.

### *Defendant's Pixel Disseminates Patient Information via Its Website*

81.    An example illustrates the point. If a patient uses the Website to schedule an appointment with an Overlake hospital, Defendant's Website directs them to communicate Private Information, including the type of medicine being sought out, the type of appointment being scheduled, and the desired location. Unbeknownst to the patient, each and every communication is sent to Facebook via Defendant's Pixel, including the buttons clicked and the filters they select.

//

//

//

//

CLASS ACTION COMPLAINT - 19

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992



*Figure 2: Screenshot from Overlake's website when a user is trying to book an appointment and it requests the user to select a location.*

82.    In the example above, the user is being prompted to select the Overlake hospital of choice, usually one that is easily accessible to the patient's current location.

83.    Next, the user selects the most convenient or preferred location, or has the option to "select all."

84.    Unbeknownst to ordinary patients, this particular webpage—which is undoubtedly used to communicate Private Information for the purpose of seeking medical treatment—contains Defendant's Pixel.

85.    Thus, without alerting the user, Defendant's Pixel sends the communications the user made via the webpage to Facebook, and the images below confirm that the

CLASS ACTION COMPLAINT - 20

1      communications Defendant sends to Facebook contain the user's Private Information.

2
3

- **method**: GET
- **url**: https://www.facebook.com/tr/?id=712682029240809&ev=PageView&dl=https://www.overlakehospital.org/visit/schedule-an-appointment&rl=&if=false&ts=1670424999547&sw=1366&sh=768&v=2.9.89&r=stable&ec=0&o=30&fbp=fb.1.1670424925098.8386748
- **httpVersion**: http/1.1

4
5    *Figure 3: Image depicting a zoomed in portion of Figure 4 showing the GET request from Facebook.*

6        86.     The URL contains "?id=712682029240809," which refers to Defendant's Pixel

7 ID and confirms that Defendant has downloaded the Pixel into its Source Code for this

8 particular webpage.

9
10        87.     On the same line of text, "ev= PageView," identifies and categorizes which

11 actions the user took on the webpage ("ev=" is an abbreviation for event, and "PageView" is

12 the type of event). Thus, this identifies the user as having viewed the "Schedule an

13 Appointment" page on the Overlake Hospital website.

14        88.     Finally, the highlighted text ("GET") demonstrates that Defendant's Pixel sent

15 the user's communications, and the Private Information contained therein, alongside the user's

16 Facebook ID (c_user ID), thereby allowing the user's communications and actions on the

17 website to be linked to their specific Facebook profile.

18      //

19
20
21      //

22
23      //

24
25
26      //

CLASS ACTION COMPLAINT - 21

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

- **method**: GET
- **url**: https://www.facebook.com/tr?id=712682029240809&ev=PageView&dl=https://www.overlakehospital.org/visit/schedule-an-appointment&rl=&if=false&ts=1670042999547&sw=1366&sh=768&v=2.9.89&r=stable&ec=0&o=30&fbp=fb.1.1670424925098.838674∫
- **httpVersion**: http/1.1
- **headers**:
  [{'name': 'authority', 'value': 'www.facebook.com'}, {'name': ':method', 'value': 'GET'}, {'name': ':path', 'value': '/tr?
  id=712682029240809&ev=PageView&dl=https%3A%2F%2Fwww.overlakehospital.org%2Fvisit%2Fschedule-an-
  appointment&rl=&if=false&ts=1670042999547&sw=1366&sh=768&v=2.9.89&r=stable&ec=0&o=30&fbp=fb.1.1670424925098.8.$.
  {'name': ':scheme', 'value': 'https'}, {'name': 'accept', 'value':
  'image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8'}, {'name': 'accept-encoding', 'value': 'gzip, deflate, br'},
  {'name': 'accept-language', 'value': 'en-US,en;q=0.9'}, {'name': 'cookie', 'value': 'sb=KD-9Xz10oIpiUei40RtjsiVI;
  datr=XTCCY_GYNdQNO93Ot5YIP45M; locale=en_US; c_user=████████████
  xs=9%3AqLe5YoUdKssw3A%3A2%3A1670387326%3A-1%3A1665%3A3AAcVdWkbrz-eozzelbKmCgj-
  j_K9frpo7x_xog_9IhQ;
  fr=0wStx9kjiWZBr5Y2i.AWVC9KjWLuDzbMeZYQnwsLBHbbU.BjkIcs.7P.AAA.0.0.BjkIcs.AWVUS8qaMK0; dpr=1'}, {'name':
  'sec-ch-ua', 'value': '"Not?A_Brand";v="8", "Chromium";v="108", "Google Chrome";v="108"'}, {'name': 'sec-ch-ua-mobile',
  'value': '?0'}, {'name': 'sec-ch-ua-platform', 'value': '"Windows"'}, {'name': 'sec-fetch-dest', 'value': 'image'}, {'name': 'sec-fetch-
  mode', 'value': 'no-cors'}, {'name': 'sec-fetch-site', 'value': 'cross-site'}, {'name': 'user-agent', 'value': 'Mozilla/5.0 (Windows NT 6.3;
  Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/108.0.0.0 Safari/537.36'}]
- **queryString**:
  [{'name': 'id', 'value': '712682029240809'}, {'name': 'ev', 'value': 'PageView'}, {'name': 'dl', 'value':
  'https%3A%2F%2Fwww.overlakehospital.org%2Fvisit%2Fschedule-an-appointment'}, {'name': 'rl', 'value': ''}, {'name': 'if', 'value':
  'false'}, {'name': 'ts', 'value': '1670042999547'}, {'name': 'sw', 'value': '1366'}, {'name': 'sh', 'value': '768'}, {'name': 'v', 'value':
  '2.9.89'}, {'name': 'r', 'value': 'stable'}, {'name': 'ec', 'value': '0'}, {'name': 'o', 'value': '30'}, {'name': 'fbp', 'value':
  'fb.1.1670424925098.838674818'}, {'name': 'it', 'value': '1670042999411'}, {'name': 'coo', 'value': 'false'}, {'name': 'rqm', 'value':

*Figure 4: Image depicting the Payload of the network traffic when a user visits Defendant's website www.overlakehospital.org to schedule an appointment. Highlights depict this is a GET request, from Facebook, including Facebook's id for Defendant, that the user viewed the schedule an appointment page, and the user's unique identifier, c_user cookie which has been redacted.*

89.   The image demonstrates that the user's Facebook ID (highlighted as "c_user=" in the image above) was sent alongside the other data.[12]

90.   At present, the full breadth of Defendant's tracking and data sharing practices is unclear, but other evidence suggests Defendant is using additional tracking pixels and tools to transmit its patients' Private Information to additional third parties. For example, the image below indicates that Defendant is also sending its patients' protected health information to Google via Google Tag Manager and even tracks and records the exact text and phrases that a user types into the general search bar located on Defendant's homepage. In the example below, the user typed "Cancer" into the search bar.

---

[12] The user's Facebook ID is represented as the c_user ID highlight in the image below, and Plaintiff has redacted the corresponding string of numbers to preserve the user's anonymity.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Figure 5: Screenshot from Overlake's website when a user has typed "cancer" into the search bar with "cancer" highlighted for readability.*

91.    Resultantly, that exact phrase is sent to Google. This is simply unacceptable, and there is no legitimate reason for sending this information to Google.

92.    Accordingly, Google receives patients' communications alongside the patients' IP address, which is also impermissible under HIPAA.



*Figure 6: Image depicting Google Analytics as the requesting entity, the unique identifier id which identifies Defendant, the Defendant's URL, the specific search the user made when visiting Defendant's website, and the POST request from Google.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    93.    Additionally, as seen in the images below, in at least 2020, Defendant was using

2    Google    Analytics    on    its    patient    portal    login    page,

3    https://www.overlakehospital.org/visit/patient-portal, that redirected users to MyChart's login

4    page. In effect, Defendant's use of Google Analytics on its patient portal login page was

5    transmitting to Google that a user was logging into the patient portal and was a patient of

6    Defendant.

7

8    

9

10

11

12

13

14

15   Figure 7: Image depicting a screengrab from the wayback machine tool depicting Overlake's

16   landing page in roughly September 2020 and the backend network traffic showing Google

17   Analytics.

18   

19

20

21

22

23

24   Figure 8: Zoomed in image of figure 7 above depicting the archived web address as well as the
     date for which it depicts (.i.e. September 29, 2020).

25

26

CLASS ACTION COMPLAINT - 24



*Figure 9: zoomed in image of figure 7, the logged in user is redacted as it depicts the gmail account that the user was logged in with at the time the screenshot was captured. Other information such as the GET Request, the patient URL, and any identifying information is underlined and highlighted for reference.*

94. In each of the examples above, the user's website activity and the contents of the user's communications are sent to Facebook or Google alongside their personally identifiable information. Several different methods allow marketers and third parties to identify individual website users, but the examples above demonstrate what happens when the website user is logged into Facebook on their web browser or device. When this happens, the website user's identity is revealed via third-party cookies that work in conjunction with the Pixel. For example, the Pixel transmits the user's c_user cookie, which contains that user's unencrypted Facebook ID, and allows Facebook to link the user's online communications and interactions to their individual Facebook profile.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

95.     Defendant does not disclose that the Pixel, First Party cookies, Google Tag Manager, Google Analytics, or any other tracking tools embedded in the Website's source code tracks, records, and transmits Plaintiff's and Class Members' Private Information to Facebook and Google. Moreover, Defendant never received consent or written authorization to disclose Plaintiff's and Class Members' private communications to Facebook or Google.

**Overlake Violated both Industry Standards and Federal Warnings Regarding Tracking Codes on Healthcare Websites.**

96.     Defendant's tracking of user behavior falls well outside of users' reasonable expectations of privacy regarding their health data. For example, the American Medical Association's (the "AMA") Code of Ethics lists "safeguard[ing] patient confidences and privacy" as one of its core principles.[13]

97.     Further, AMA ethics opinion 3.2.4 regarding access to medical records by data collection companies reads in part:

> Information gathered and recorded in association with the care of a patient is confidential. Patients are entitled to expect that the sensitive personal information they divulge will be used solely to enable their physician to most effectively provide needed services. Disclosing information to third parties for commercial purposes without consent undermines trust, violates principles of informed consent and confidentiality, and may harm the integrity of the patient-physician relationship.[14]

98.     In addition, the federal government has issued guidance warning that tracking code like the Meta Pixel and Google Analytics may violate federal privacy law when installed on healthcare websites like Defendant's. The statement—titled "Use of Online Tracking Technologies" by HIPAA Covered Entities and Business Associates (the "Bulletin")—was

---

[13] *Code of Medical Ethics*, American Medical Association, https://code-medical-ethics.ama-assn.org/principles.

[14] *Opinion 3.2.4 Access to Medical Records by Data Collection Companies*, American Medical Association, https://code-medical-ethics.ama-assn.org/ethics-opinions/access-medical-records-data-collection-companies (last visited July 25, 2025).

CLASS ACTION COMPLAINT - 26

1  issued by the Department of Health and Human Services' Office for Civil Rights ("OCR") in

2  December 2022 and further clarified in March 2024.[15]

3      99.    Healthcare organizations regulated under the Health Insurance Portability and

4  Accountability Act ("HIPAA") may use third-party tracking tools, such as the Meta Pixel and

5  Google Analytics, in a limited way, to perform analysis as part of the entity's health care

6  operations, such as gathering innocuous data which does not include patient information. They

7  are however, not permitted to use these tools in a way that may cause an unauthorized exposure

8  of patients' Protected Health Information ("PHI") to external vendors. The Bulletin explains:

9  **Regulated entities are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules.** For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.[16]

13      100.    Further, the Bulletin discusses how businesses associated with covered entities

14  may violate HIPAA with similar disclosures of PHI:

15  Furthermore, tracking technology vendors are business associates if they create, receive, maintain, or transmit PHI on behalf of a regulated entity for a covered function (e.g., health care operations) or provide certain services to or for a covered entity (or another business associate) that involve the disclosure of PHI. In these circumstances, regulated entities must ensure that the disclosures made to such vendors are permitted by the Privacy Rule and enter into a business associate agreement (BAA) with these tracking technology vendors to ensure that PHI is protected in accordance with the HIPAA Rules. For example, if an individual makes an appointment through the website of a covered health clinic for health services and that website uses third party tracking technologies, then the website might automatically transmit information regarding the appointment and the individual's IP address to a tracking technology vendor. In this case, the tracking technology vendor is a business associate, and a BAA is required.[17]

23

---

24  [15] *Use Of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, HHS, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online- tracking/index.html (last visited May 1, 2024).

[16] *Id.* (emphasis in original).

26  [17] *Id.*

CLASS ACTION COMPLAINT - 27

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

101. The Bulletin discusses the types of harm that disclosures of PHI may cause to a patient:

> An impermissible disclosure of an individual's PHI not only violates the Privacy Rule but also may result in a wide range of additional harms to the individual or others. For example, an impermissible disclosure of PHI may result in identity theft, financial loss, discrimination, stigma, mental anguish, or other serious negative consequences to the reputation, health, or physical safety of the individual or to others identified in the individual's PHI. Such disclosures can reveal incredibly sensitive information about an individual, including diagnoses, frequency of visits to a therapist or other health care professionals, and where an individual seeks medical treatment. While it has always been true that regulated entities may not impermissibly disclose PHI to tracking technology vendors, because of the proliferation of tracking technologies collecting sensitive information, now more than ever, it is critical for regulated entities to ensure that they disclose PHI only as expressly permitted or required by the HIPAA Privacy Rule.[18]

102. Plaintiff and Class Members face exactly the risks highlighted in the Bulletin. Overlake disclosed to Meta and Google that Plaintiff and Class Members sought out or took steps to book appointments on Overlake's Website, which in turn also disclosed the health conditions for which a health care provider was sought; the frequency with which the Plaintiff or Class Member takes steps relating to obtaining eye health care; and where they seek medical treatment. Per the Bulletin, this information is "incredibly sensitive."

103. The Bulletin goes on to discuss the exact nature of the disclosures required and how standard disclosures like privacy policies, notices, cookie policies, or even de-identification would not meet the bar required under HIPAA. The Bulletin says:

> Regulated entities may identify the use of tracking technologies in their website or mobile app's privacy policy, notice, or terms and conditions of use. However, the Privacy Rule does not permit disclosures of PHI to a tracking technology vendor based solely on a regulated entity informing individuals in its privacy policy, notice, or terms and conditions of use that it plans to make such disclosures. ... If there is not an applicable Privacy Rule permission or if the vendor is not a business associate of the regulated entity, then the individuals' HIPAA-compliant authorizations are required before the PHI is disclosed to the vendor. Website banners that ask users to accept or reject a website's use of tracking technologies,

---

[18] *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

such as cookies, do not constitute a valid HIPAA authorization. …
Further, it is insufficient for a tracking technology vendor to agree to
remove PHI from the information it receives or de-identify the PHI before
the vendor saves the information. Any disclosure of PHI to the vendor
without individuals' authorizations requires the vendor to have a signed
BAA in place **and** requires that there is an applicable Privacy Rule
permission for disclosure.[19]

104.    To be clear, Overlake's conduct violates the rules outlined by the AMA and the

OCR's Bulletin regarding the appropriate use of tracking technologies on websites.

**Plaintiff's and Class Members' Expectation of Privacy**

105.    Plaintiff and Class Members were aware of Defendant's duty of confidentiality

when they sought medical services from Defendant.

106.    Indeed, at all times when Plaintiff and Class Members provided their Private

Information to Defendant, they all had a reasonable expectation that the information would

remain private and that Defendant would not share the Private Information with third parties for

a commercial purpose, unrelated to patient care.

**IP Addresses are Personally Identifiable Information**

107.    On information and belief, through the use of the Facebook Pixel on the

Defendant's Website, Defendant also disclosed and otherwise assisted Facebook with

intercepting Plaintiff's and Class Members' Computer IP addresses.

108.    An IP address is a number that identifies the address of a device connected to

the Internet.

109.    IP addresses are used to identify and route communications on the Internet.

110.    IP addresses of individual Internet users are used by Internet service providers,

Websites, and third-party tracking companies to facilitate and track Internet communications.

---

[19] *Id.* (emphasis in original).

CLASS ACTION COMPLAINT - 29

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

111. Facebook tracks every IP address ever associated with a Facebook user.

112. Google also tracks IP addresses associated with Internet users.

113. Facebook, Google, and other third-party marketing companies track IP addresses for use in tracking and targeting individual homes and their occupants with advertising by using IP addresses.

114. Under HIPAA, an IP address is considered personally identifiable information:

    a. HIPAA defines personally identifiable information to include "any unique identifying number, characteristic or code" and specifically lists the example of IP addresses. *See* 45 C.F.R. § 164.514 (2).

    b. HIPAA further declares information as personally identifiable where the covered entity has "actual knowledge that the information to identify an individual who is a subject of the information." 45 C.F.R. § 164.514(2)(ii); *See also*, 45 C.F.R. § 164.514(b)(2)(i)(O).

115. Consequently, by disclosing IP addresses, Defendant's business practices violated HIPAA and industry privacy standards.

**Defendant Was Enriched and Benefitted from the Use of The Pixel and Unauthorized Disclosures**

116. The sole purpose of the use of the Facebook Pixel on Defendant's Website was marketing and profits.

117. In exchange for disclosing the Private Information of its patients, Defendant is compensated by Facebook in the form of enhanced advertising services and more cost-efficient marketing on Facebook.

118. Retargeting is a form of online marketing that targets users with ads based on

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

their previous internet communications and interactions. Upon information and belief, as part of its marketing campaign, Defendant re-targeted patients and potential patients.

119.    By utilizing the Tracking Tools, the cost of advertising and retargeting was reduced, thereby benefitting Defendant.

### IV.    TOLLING

120.    Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know (and had no way of knowing) that her Private Information was intercepted and unlawfully disclosed to Facebook because Defendant kept this information secret. Furthermore, the tolling rule of 28 U.S.C.A. § 1367(d) applies because this action had been pending in federal court in *Nienaber v. Overlake Hospital Medical Center*, Case No. 2:23-CV-01159 (W.D. Wash.), through two motions to dismiss until the court dismissed with prejudice Plaintiff's federal Wiretap claim under 18 U.S.C.A. § 2511(1) on March 4, 2025.

### V.    CLASS ACTION ALLEGATIONS

121.    Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated ("the Class") pursuant to CR 23(a), 23(b)(2), and 23(b)(3).

122.    The Nationwide Class that Plaintiff seeks to represent is defined as follows:

All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent as a result of using Defendant's Website.

123.    Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

124.    Plaintiff reserves the right to modify or amend the definition of the proposed

CLASS ACTION COMPLAINT - 31

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

class, including through the creation of subclasses if necessary, before the Court determines whether certification is appropriate.

125.    <u>Numerosity</u>, CR 23(a)(1). The Nationwide Class members are so numerous that joinder of all members is impracticable. Upon information and belief, there are hundreds of thousands of individuals whose Private Information may have been improperly disclosed to Facebook, and the Class is identifiable within Defendant's records.

126.    <u>Commonality</u>, CR 23(a)(2) and (b)(3). Questions of law and fact common to the Class exist and predominate over any questions affecting only individual Class Members. These include:

    a.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiff and Class Members;

    b.    Whether Defendant had duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

    c.    Whether Defendant violated its privacy policy by disclosing the Private Information of Plaintiff and Class Members to Facebook and/or additional third parties.

    d.    Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their Private Information would be disclosed to third parties;

    e.    Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their Private Information had been compromised;

    f.    Whether Defendant adequately addressed and fixed the practices which permitted the disclosure of patient Private Information;

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

g.  Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and Class Members;

h.  Whether Defendant violated the consumer protection statutes invoked herein;

i.  Whether Plaintiff and Class Members are entitled to actual, consequential, and/or nominal damages as a result of Defendant's wrongful conduct;

j.  Whether Defendant knowingly made false representations as to its data security and/or privacy policy practices;

k.  Whether Defendant knowingly omitted material representations with respect to its data security and/or privacy policy practices; and

l.  Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Defendant's disclosure of their Private Information.

127.  Typicality, CR 23(a)(3). Plaintiff's claims are typical of those of other Class Members because all had their Private Information compromised as a result of Defendant's incorporation of the Facebook Pixel, due to Defendant's misfeasance.

128.  Adequacy, CR 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that Plaintiff has no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiff seeks no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages Plaintiff has suffered are typical of other Class Members. Plaintiff has also retained counsel experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously.

129.  Superiority and Manageability, CR 23(b)(3). Class litigation is an appropriate

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

130.    Policies Generally Applicable to the Class. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

131.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was

CLASS ACTION COMPLAINT - 34

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

exposed is representative of that experienced by the Class and will establish the right of each

Class Member to recover on the cause of action alleged; and individual actions would create a

risk of inconsistent results and would be unnecessary and duplicative of this litigation.

132.    The litigation of the claims brought herein is manageable. Defendant's uniform

conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class

Members demonstrate that there would be no significant manageability problems with

prosecuting this lawsuit as a class action.

133.    Adequate notice can be given to Class Members directly using information

maintained in Defendant's records.

134.    Unless a Class-wide injunction is issued, Defendant may continue disclosing the

Private Information of Class Members, Defendant may continue to refuse to provide proper

notification to Class Members regarding the practices complained of herein, and Defendant

may continue to act unlawfully as set forth in this Complaint.

135.    Further, Defendant has acted or refused to act on grounds generally applicable to

the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to

the Class Members as a whole is appropriate under CR 23(b)(2).

136.    Likewise, particular issues under CR 23(c)(4) are appropriate for certification

because such claims present only particular, common issues, the resolution of which would

advance the disposition of this matter and the parties' interests therein. Such particular issues

include, but are not limited to:

    a. Whether Defendant owed a legal duty to not disclose Plaintiff's and Class

        Members' Private Information;

    b. Whether Defendant owed a legal duty to not disclose Plaintiff's and Class

CLASS ACTION COMPLAINT - 35

1    Members' Private Information with respect to Defendant's privacy policy;

2    c. Whether Defendant breached a legal duty to Plaintiff and Class Members to

3    exercise due care in collecting, storing, using, and safeguarding their Private

4    Information;

5    d. Whether Defendant failed to comply with its own policies and applicable laws,

6    regulations, and industry standards relating to data security;

7    e. Whether Defendant adequately and accurately informed Plaintiff and Class

8    Members that their Private Information would be disclosed to third parties;

9    

10    f. Whether Defendant failed to implement and maintain reasonable security

11    procedures and practices appropriate to the nature and scope of the information

12    disclosed to third parties;

13    g. Whether Class Members are entitled to actual, consequential, and/or nominal

14    damages, and/or injunctive relief as a result of Defendant's wrongful conduct.

15    

16    137.    Plaintiff reserves the right to amend or modify the Class definition as this case

17    progresses.

18    **COUNT I**
**Violations of the Washington Health Care Information Act ("UHCIA")**
19    **Wash. Rev. Code Ann. § 70.02 et seq.**
**(On Behalf of Plaintiff and the National Class)**
20    

21    138.    Plaintiff repeats and re-alleges each and every allegation contained in the

22    Complaint as if fully set forth herein.

23    139.    Plaintiff and Class Members are current and former patients of Defendant.

24    140.    Defendant is a "health care provider" as defined by Wash. Rev. Code Ann. §

25    7.70.020. In its capacity as a "health care provider," Defendant provided "health care"—as

26    

CLASS ACTION COMPLAINT - 36

1   defined by Wash. Rev. Code Ann. § 70.02.070(15)—to Plaintiff and Class Members.

2       141.   Plaintiff and Class Members are, and at all relevant times were, Defendant's

3   "patients" as that term is defined by Wash. Rev. Code Ann. § 70.02.010(34).

4       142.   Plaintiff and Class Members communicated "health care information"—as

5   defined by Wash. Rev. Code Ann. § 70.02.070(17)—when they communicated with Defendant

6   through its Website regarding their past, present, and future physical or mental health or

7   condition and the provision of health care. This information relates directly to Plaintiff's and

8   Class Members' health care and can be identified, or can be readily associated with the identity

9   of, Plaintiff and Class Members.

10

11       143.   Under the UHCIA, "a health care provider, an individual who assists a health

12  care provider in the delivery of health care, or an agent and employee of a health care provider

13  may not disclose health care information about a patient to any other person without the

14  patient's written authorization." Wash. Rev. Code Ann. § 70.02.070(1).

15

16       144.   The UHCIA further prohibits a health care provider to "use or disclose health

17  care information for marketing" or "[s]ell health care information to a third party" without the

18  patient's authorization. Id. §§ 70.02.280(1) & (2)(h).

19       145.   Defendant's use of the Tracking Tools as discussed supra resulted in

20  Defendant's disclosure of Plaintiff's and Class Members' personally identifiable health care

21  information to unauthorized third parties.

22

23       146.   Neither Plaintiff nor Class Members consented to or otherwise authorized

24  Defendant to share their readily identifiable private health care information with Meta, Google,

25  or any other third party. Under the UHCIA, a health care provider or other person who causes

26  an unauthorized release of health care information by disclosure of such information violates

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  the UHCIA and is liable to the affected patient for compensatory damages, plus costs and

2  reasonable attorney's fees.

3      147.  As a result of Defendant's violations of the UHCIA, Plaintiff and Class

4  Members seek all damages authorized by law, including compensatory damages, plus costs and

5  reasonable attorney's fees.

6  

**COUNT II**
**Violations of Wash. Rev. Code Ann. § 7.70 et seq.**
**Injury Resulting from Health Care**
**(On Behalf of Plaintiff and the National Class)**

7

8

9      148.  Plaintiff repeats and re-alleges each and every allegation contained in the

10  Complaint as if fully set forth herein.

11

12      149.  Plaintiff and Class Members are current and former patients of Defendant.

13      150.  Defendant is a "health care provider" as defined by Wash. Rev. Code

14  Ann. § 7.70.020.

15      151.  Defendant caused injuries to Plaintiff and Class Members by departing from the

16  accepted standard of care when it violated federal and state statutory obligations, as well as

17  common law obligations, in installing and configuring Tracking Tools on its digital platforms

18  to record, store, and transmit patient information for the purpose of increasing profitability.

19

20      152.  Further, Defendant made assurances to Plaintiff and Class Members that it

21  would not disclose their Private Information, pursuant to HIPAA, unless it was to an authorized

22  party or for some other authorized purpose. Defendant broke these promises when it disclosed

23  Plaintiff's and Class Members' Private Information to unauthorized third parties, such as

24  Facebook, for an unauthorized purpose, increasing Defendant's revenue.

25      153.  The standard of care for health care providers in the state of Washington

26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    requires that health care providers maintain the confidentiality of patient information unless the

2    disclosure is permitted by law or by a patient's informed consent.

3        154.    Defendant's disclosure of Plaintiff's and Class Members' patient information

4    was not permitted by law and was not authorized by informed consent, as Defendant did not

5    disclose to its patients that it had implemented the Tracking Tools on its digital platforms.

6        155.    Defendant's departure from the standard of care is the direct and proximate

7    cause of the injuries incurred by Plaintiff and Class Members, as described herein.

8

9                                        **COUNT III**
                        **Violations of the Washington Consumer Protection Act,**
10                         **Wash. Rev. Code Ann. §§ 19.86.020, et seq.**
                              **(On Behalf of Plaintiff and the Class)**
11

12       156.    Plaintiff repeats and re-alleges each and every allegation contained in the

13   Complaint as if fully set forth herein.

14       157.    Defendant is a "person," as defined by Wash. Rev. Code Ann. § 19.86.010(1).

15       158.    Defendant advertised, offered, or sold goods or services in Washington and

16   engaged in trade or commerce directly or indirectly affecting the people of Washington, as

17   defined by Wash. Rev. Code Ann. § 19.86.010 (2).

18       159.    Defendant engaged in unfair or deceptive acts or practices in the conduct of

19   trade or commerce, in violation of Wash. Rev. Code Ann. § 19.86.020, including:

20

21           a.  Failing to secure and protect Plaintiff's and the Class Members' Private

22               Information in a confidential manner;

23           b.  Failing to inform Plaintiff and the Class Members of Defendant's use of the

24               Facebook Pixel and Conversions API tools;

25           c.  Failing to inform Plaintiff and Class Members of the extent of Defendant's data

26

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

harvesting, tracking, and disclosure practices;

d. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505, which was a direct and proximate cause of the Data Breach;

e. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and The Class Members' Private Information, including by implementing and maintaining reasonable security measures;

f. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505.

g. Misrepresenting that certain sensitive Private Information would not be disclosed to third parties;

h. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Class Members' Private Information; and

i. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Class Members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505.

160.    Defendant's representations and omissions were material because they were

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

likely to deceive reasonable consumers about the adequacy of Defendant's ability and intentions to protect the confidential and sensitive Private Information of Plaintiff and Class Members communicated for the purpose of medical treatment.

161. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff and Class Members, that their Private Information would be held in a secure and confidential manner, rather than deliberately disclosed to third parties.

162. Defendant acted intentionally, knowingly, and maliciously to violate Washington's Consumer Protection Act, and recklessly disregarded Plaintiff's and Class Members' rights.

163. Defendant's conduct is injurious to the public interest because it violates Wash. Rev. Code Ann. § 19.86.020, violates a statute that contains a specific legislation declaration of public interest impact, including, but not limited to Wash. Rev. Code §§ 19.255.010, et seq. Alternatively, Defendant's conduct is injurious to the public interest because it has injured Plaintiff and Class Members, had the capacity to injure persons, and has the capacity to injure other persons, and has the capacity to injure persons. Further, its conduct affected the public interest, including the thousands of Washington Residents impacted by Defendant's use of the Tracking Tools.

164. As a direct and proximate result of Defendant's unfair methods of competition and unfair or deceptive acts or practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including the damage to their privacy and property interests in their Private Information.

CLASS ACTION COMPLAINT - 41

165.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, injunctive relief, civil penalties, and attorneys' fees and costs.

## COUNT IV
### Breach of Fiduciary Duty
### (On behalf of Plaintiff and the National Class)

166.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

167.    A fiduciary relationship involving "every element of trust, confidence, and good faith" existed between Plaintiff and Class Members, and Defendant.

168.    Plaintiff and Class members placed Defendant Overlake in a position of trust and confidence by using Defendant's digital platforms to communicate their Private Information, including the specific and sensitive contents of their communications directly with healthcare providers.

169.    Defendant Overlake, by accepting payment from Plaintiff and Class Members, by providing treatment and information to Plaintiff and Class Members, accepted and appreciated its responsibility to its patients, including Plaintiff and Class Members.

170.    Defendant assumed a duty not to disclose the Private Information provided by Plaintiff and Class Members to any parties not authorized under law or by the informed consent of Plaintiff and Class Members.

171.    Defendant breached the fiduciary duty owed to Plaintiff and Class Members by deliberately configuring the Tracking Tools on its digital platforms to track, record, and transmit patients' Private Information to unauthorized third parties, and thereby failing to act with the utmost good faith, fairness, and honesty, in its dealings with its patients.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

172.    Defendant's breach of fiduciary duty is evidenced by its failure to comply with federal and state privacy regulations, including:

a.  Failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

b.  Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

c.  Failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 C.F.R. § 164.306(a)(4);

d.  Failing to obtain satisfactory assurances, including in writing, that its business associates and/or subcontractors would appropriately safeguard Plaintiff's and Class Members' PHI;

e.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  Failing to implement technical security measures to guard against unauthorized access to electronic protected health information that is being transmitted over an electronic communications network in violation of 45 C.F.R. § 164.312(e)(1);

g.  Impermissibly and improperly using and disclosing Private Information that is and remains accessible to unauthorized persons in violation of 45 C.F.R. §

CLASS ACTION COMPLAINT - 43

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

164.502, et seq. and 45 C.F.R. § 164.508, et seq.;

    h.  Failing to effectively train all members of its workforce (including independent contractors) on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

    i.  Failing to comply with R.C. 3798.04, et seq., regarding the use or disclosure of protected health information.

173.    Defendant's breaches of fiduciary duty were a direct and proximate cause of several injuries suffered by Plaintiff and Class Members, including, but not limited to, losses of privacy, interference with confidential relationships, diminished value of Private Information, and the lost benefit of their bargains. Plaintiff and Class Members seek compensatory damages in an amount to be proved at trial. In the alternative, Plaintiff and Class Members seek nominal damages.

## COUNT V
### Negligence
### (On Behalf of Plaintiff and the National Class)

174.    Plaintiff re-alleges and incorporates by reference all other paragraphs in the Complaint as if fully set forth herein.

175.    Plaintiff and Class Members are individuals who received and, either directly or indirectly, paid for medical services rendered by Defendant in the course of its business.

176.    Defendant required patients and users, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of interacting with Defendant's website and seeking to obtain medical care and treatment.

CLASS ACTION COMPLAINT - 44

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

177.    Defendant owed Plaintiff and Class Members a duty to keep their Private Information completely confidential, and to safeguard sensitive personal and medical information.

178.    Plaintiff and Class Members had reasonable expectations of privacy in their communications exchanged with Defendant, including communications exchanged on Defendant's Website.

179.    Contrary to its duties as a medical provider and its express promises of confidentiality, Defendant installed its Tracking Tools to disclose and transmit to third parties Plaintiff's and Class Members' communications with Defendant, including Private Information and the contents of such information.

180.    These disclosures were made without Plaintiff's or Class Members' knowledge, consent, or authorization, and were unprivileged.

181.    The third-party recipients included, but may not be limited to, Facebook and/or Google.

182.    Defendant's duty of care to exercise reasonable care in protecting the confidentiality of Private Information that it is entrusted with arose from ordinary principles of foreseeability, industry standards, and the special relationship that existed between Defendant and its patients. Defendant was in a superior position to ensure that its systems were sufficient and that its employees and agents were adequately trained to protect against the foreseeable risk of harm to Class Members from the unauthorized disclosure of their Private Information.

183.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

CLASS ACTION COMPLAINT - 45

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

a.  Engaging the use of the Facebook Pixel and Conversions API when it knew or should have known that this would track and record the interactions of Plaintiff and Class Members with Defendant's Website;

b.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

c.  Failing to adequately program the Pixel and Conversions API to protect the anonymity of Plaintiff and Class Members;

d.  Failing to prevent foreseeable access to Class Members' PHI and PII; and

e.  Negligently and/or recklessly failing to understand or detect the disclosure of Plaintiff's and Class Members' PHI and PII to third parties.

184.    It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members' PHI and PII would result in injury to Class Members. Furthermore, the tracking, recording, and transmission of patients' personal information was foreseeable, as this is what the Pixel is designed to do, and it is widely understood in Defendant's field that third parties often seek to collect data when providing business services, and Defendant's field contains a large quantity of sensitive, confidential information inaccessible from other industries.

185.    Plaintiff and Class Members have been damaged by Defendant's negligent use of the Facebook Pixel and Conversions API. These injuries include, but are not limited to, the loss of privacy of their highly sensitive medical information (such as disclosure of medical conditions and symptoms) and the emotional distress and embarrassment flowing from the disclosure of that information to unauthorized third parties. Moreover, Plaintiff's and Class

CLASS ACTION COMPLAINT - 46

1   Members' private information is now in the hands of unknown third parties who may or may

2   not take steps to secure that information from further disclosure.

3        186.   As a direct and proximate cause of Defendant's unauthorized disclosures of

4   patient personally identifiable, non-public medical information, and communications, Plaintiff

5   and Class members were damaged by Defendant's breach in that:

> a.   Sensitive and confidential information that Plaintiff and Class members intended
>      to remain private is no longer private;
>
> b.   Plaintiff and Class members face ongoing harassment and embarrassment in the
>      form of unwanted targeted advertisements;
>
> c.   Defendant eroded the essential confidential nature of the provider-patient
>      relationship;
>
> d.   General damages for invasion of their rights in an amount to be determined by a
>      jury;
>
> e.   Nominal damages for each independent violation;
>
> f.   Defendant took something of value from Plaintiff and Class Members and
>      derived benefit therefrom without Plaintiff's and Class Members' knowledge or
>      informed consent and without compensation for such data;
>
> g.   Plaintiff and Class Members did not get the full value of the medical services for
>      which they paid, which included Defendant's duty to maintain confidentiality;
>
> h.   Defendant's actions diminished the value of Plaintiff's and Class Members'
>      Private Information; and
>
> i.   Defendant's actions violated the property rights Plaintiff and Class Members
>      have in their Private Information.

CLASS ACTION COMPLAINT - 47

## COUNT VI
### Fraudulent Concealment
### (On Behalf of Plaintiff and the National Class)

187.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

188.    Defendant knew or should have known that third parties were acquiring and using Plaintiff's and Class Members' Private Information using code that the third parties provided, and Overlake deployed on its website.

189.    Defendant had a duty to disclose these facts because (1), it was in a superior position to know the true facts about the Private Information that Plaintiff and Class Members communicate through Defendant's website, (2) because it made partial disclosures about the confidentiality of such information, (3) because of its confidential and fiduciary relationship with Plaintiff and Class Members, and (4) because the Washington Health Care Information Act imposes a statutory duty on Overlake to disclose its information practices.

190.    The facts that Defendant failed to disclose are material facts that a reasonable person would consider important in deciding whether to communicate Private Information through Overlake's website.

191.    Plaintiff and Class Members did not know about Defendant's undisclosed conduct and could not have known about it when they used Overlake's website.

192.    Plaintiff and Class Members justifiably acted or relied upon the concealed or undisclosed facts to their detriment, as evidenced by their use of Defendant's website to communicate Private Information.

193.    As a direct and proximate result of Defendant's concealment, Plaintiff and Class Members were damaged in that:

CLASS ACTION COMPLAINT - 48

a. Sensitive, confidential, and/or protected information that Plaintiff and Class Members intended to remain private is no longer private;

b. Overlake took something of value from Plaintiff and Class Members and derived benefit therefrom without Plaintiff's or Class Members' knowledge or informed consent and without sharing the benefit of such value;

c. Plaintiff and Class Members did not get the full value of the healthcare services for which they paid, which included Overlake's duty to maintain confidentiality of patient data and communications; and

d. Overlake's actions diminished the value of Plaintiff's and Class Members' Private Information, patient data, and communications.

194.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, injunctive relief, and other appropriate equitable relief, as well as attorneys' fees and costs.

**COUNT VII**
**Invasion of Privacy**
**(On Behalf of Plaintiff and the National Class)**

195.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

196.    The Private Information of Plaintiff and Class Members consists of private and confidential facts and information that was never intended to be shared beyond private communications.

197.    Plaintiff and Class Members had a legitimate expectation of privacy regarding their Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

CLASS ACTION COMPLAINT - 49

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

198.    Defendant owed a duty to Plaintiff and Class Members to keep their Private Information confidential.

199.    Defendant owed a duty to Plaintiff and Class Members not to give publicity to their private lives to Facebook and Google and, by extension, other third-party advertisers and businesses who purchased Facebook's and Google's advertising services.

200.    Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information to Facebook, a third-party social media and marketing giant, is highly offensive to a reasonable person.

201.    Defendant's willful and intentional disclosure of Plaintiff's and Class Members' Private Information constitutes an intentional interference with Plaintiff's and the Class Members' interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

202.    Defendant's conduct constitutes an intentional physical or sensory intrusion on Plaintiff's and Class Members' privacy because Defendant facilitated Facebook's simultaneous eavesdropping and wiretapping of confidential communications.

203.    Defendant failed to protect Plaintiff's and Class Members' Private Information and acted knowingly when it installed the Pixel onto its Website because the purpose of the Pixel is to track and disseminate individual's communications with the Website for the purpose of marketing and advertising.

204.    Because Defendant intentionally and willfully incorporated the Facebook Pixel into its Website and encouraged patients to use that Website for healthcare purposes, Defendant had notice and knew that its practices would cause injury to Plaintiff and Class Members.

205.    As a proximate result of Defendant's acts and omissions, the private and

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

sensitive Private Information of Plaintiff and Class Members was disclosed to a third party without authorization, causing Plaintiff and the Class to suffer damages.

206.    Plaintiff, on behalf of herself and Class Members, seeks compensatory and general damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, punitive damages, plus prejudgment interest, and costs.

207.    Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class since their Private Information is still maintained by Defendant and still in the possession of Facebook and the wrongful disclosure of the information cannot be undone.

208.    Plaintiff and Class Members have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not undo Defendant's disclosure of the information to Facebook who on information and belief continues to possess and utilize that information.

209.    Plaintiff, on behalf of herself and Class Members, further seeks injunctive relief to enjoin Defendant from further intruding into the privacy and confidentiality of Plaintiff's and Class Members' Private Information and to adhere to its common law, contractual, statutory, and regulatory duties. Plaintiff also seeks the destruction of all data improperly acquired and used for non medical purposes and which is no longer need for medical purposes.

## COUNT VIII
### Breach of Implied Contract
### (On behalf of Plaintiff and the National Class)

210.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein.

211.    When Plaintiff and Class Members provided their Private Information to

CLASS ACTION COMPLAINT - 51

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent.

212.    Plaintiff and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

213.    Plaintiff and Class Members would not have entrusted Defendant with their Private Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Private Information without consent.

214.    Defendant breached these implied contracts by disclosing Plaintiff's and Class Members' Private Information to third parties, *i.e.*, Facebook and Google.

215.    As a direct and proximate result of Defendant's breaches of these implied contracts, Plaintiff and Class Members sustained damages as alleged herein. Plaintiff and Class Members would not have used Defendant's services, or would have paid substantially for these services, had they known their Private Information would be disclosed.

216.    Plaintiff and Class Members are entitled to compensatory and consequential damages, including loss of benefit of the bargain, or nominal damages as a result of Defendant's breach of implied contract.

### COUNT IX
### Unjust Enrichment
### (On behalf of Plaintiff and the National Class)

217.    Plaintiff repeats and re-alleges each and every allegation contained in the Complaint as if fully set forth herein, with the exception that this claim is brought in the alternative to breach of contract.

218.    Plaintiff and Class Members conferred a benefit on Defendant when they paid Defendant for its services.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

219.    Defendant also benefits substantially from the use of Plaintiff's and Class Members' Private Information and unjustly retained those benefits at their expense.

220.    Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information that Defendant collected from Plaintiff and Class Members, without authorization and proper compensation. Defendant consciously collected and used this information for its own gain, providing Defendant with economic, intangible, and other benefits, including the free use of the data for marketing, savings on marketing costs, marketing conversions of potential patients, conversions of new patients, and conversions of existing patients for new services

221.    The benefit was conferred on Defendant, who was able to use that Private Information, in conjunction with analytics tracking tools, to optimize its website and advertising campaigns, increasing the profitability of the company at Plaintiff's and Class Members' expense.

222.    Defendant unjustly retained those benefits at the expense of Plaintiff and Class Members because Defendant's conduct damaged Plaintiff and Class Members, all without providing any commensurate compensation to Plaintiff and Class Members. Plaintiff and Class Members

223.    The benefits that Defendant derived from Plaintiff and Class Members were not offered by Plaintiff and Class Members gratuitously and rightly belong to Plaintiff and Class Members. It would be inequitable under unjust enrichment principles in Washington and every other state for Defendant to be permitted to retain any of the profit or other benefits wrongly derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

224.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grant the following:

A.    For an Order certifying the Nationwide Class and appointing Plaintiff and their Counsel to represent such Class;

B.    For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members;

C.    For injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members:

D.    For an award of damages, including, but not limited to, actual, consequential, statutory, punitive, and nominal damages, as allowed by law in an amount to be determined;

E.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F.    For prejudgment interest on all amounts awarded; and

G.    Such other and further relief as this Court may deem just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands that this matter be tried before a jury.

CLASS ACTION COMPLAINT - 54

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

DATED this 5th day of August, 2025.

2

TOUSLEY BRAIN STEPHENS PLLC

3

By: s/*Jason T. Dennett*
    Jason T. Dennett, WSBA #36080

4

jdennett@tousley.com
Rebecca L. Solomon, WSBA #51520

5

rsolomon@tousley.com
1200 Fifth Avenue, Suite 1700

6

Seattle, WA 98101
Tel:  (206) 682-5600/Fax: (206) 682-2992

7

Terence R. Coates (*pro hac* forthcoming)

8

Dylan J. Gould (*pro hac* forthcoming)

9

**MARKOVITS, STOCK & DEMARCO, LLC**

10

119 E. Court St., Ste. 530
Cincinnati, Ohio 4502

11

Phone: (513) 651-3700
Fax: (513) 665-0219

12

*tcoates@msdlegal.com*

13

*dgould@msdlegal.com*

14

Gary M. Klinger (*pro hac* forthcoming)

15

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

16

227 W. Monroe Street, Suite 2100
Chicago, IL 60606

17

Telephone: (866) 252-0878
*gklinger@milberg.com*

18

Alexandra M. Honeycutt (pro hac

19

forthcoming)
MILBERG COLEMAN BRYSON PHILLIPS

20

GROSSMAN, PLLC
800 S. Gay Street, Suite 1100

21

Knoxville, TN 37929
Telephone: (866) 252-0878

22

Facsimile: (865) 522-0049

23

Email: ahoneycutt@milberg.com

24

Joseph M. Lyon (pro hac forthcoming)

25

Clint Watson (pro hac forthcoming)
THE LYON FIRM

26

2754 Erie Ave.

CLASS ACTION COMPLAINT - 55

Cincinnati, Ohio 45208
Phone: (513) 381-2333
Fax: (513) 766-9011
jlyon@thelyonfirm.com
cwatson@thelyonfirm.com

Bryan L. Bleichner (*pro hac* forthcoming)
Philip J. Krzeski (*pro hac* forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

***Counsel for Plaintiff and the Putative Class***

TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992