HONORABLE RICHARD A. JONES

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

JANE DOE, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

OVERLAKE HOSPITAL MEDICAL CENTER,

Defendant.

Case No. 2:25-cv-01711-RAJ

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND FOR LEAVE TO CONDUCT DISCOVERY**

NOTE ON MOTION CALENDAR:
November 3, 2025



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

## I. INTRODUCTION

Defendant Overlake Medical Center & Clinics[1] ("Overlake" or "Defendant") submits this Opposition to Plaintiff's Motion to Remand and For Leave to Conduct Discovery ("Motion to Remand"). This Court should exercise jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

Plaintiff admits in her Motion to Remand that she previously filed a nearly ***identical*** action in this Court on August 3, 2023: *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL (W.D. Wash. 2023) ("*Nienaber* Action"). Mot. at 2:13-14.[2] In that prior federal action, ***Plaintiff had expressly asserted CAFA jurisdiction***. Declaration of Alexander Vitruk ("Vitruk Decl."), Ex. A, Compl. ¶ 45; Ex. B, Second Amended Complaint ("SAC") ¶ 64. But after receiving unfavorable rulings on Overlake's motions to dismiss, Plaintiff voluntarily dismissed the *Nienaber* Action on March 20, 2025. *Nienaber*, No. 2:23-cv-01159-TL, Dkt. No. 59; *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F.Supp. 3d 1072 (W.D. Wash. 2024) (dismissing complaint in its entirety without prejudice except for the breach of confidence claim, which was dismissed with prejudice); *Nienaber*, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025) (dismissing with prejudice ECPA and invasion of privacy claims, and dismissing without prejudice all remaining claims except for the breach of fiduciary duty claim).

In a transparent effort to evade this Court's jurisdiction and engage in forum shopping, Plaintiff refiled the same case in King County Superior Court. After Overlake properly removed the action under CAFA—the very basis for subject matter jurisdiction that Plaintiff herself previously invoked in the *Nienaber* Action—Plaintiff now reverses course and contends that CAFA jurisdiction does not exist. Plaintiff cannot have it both ways. Having affirmatively relied on CAFA to remain in federal court before, Plaintiff is judicially estopped from now asserting the opposite position. The Court should deny Plaintiff's Motion for Remand on this basis alone.

---

[1] Defendant was erroneously sued as "Overlake Hospital Medical Center".

[2] *Compare* Vitruk Decl. Exs. A & B (*Nienaber* Action complaint and SAC) to Dkt. No. 1, Ex. D (removed state court complaint).



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

By repeatedly invoking CAFA jurisdiction in the *Nienaber* Action, Plaintiff has effectively conceded that the mandatory "Home State" exception under 28 U.S.C. § 1332(d)(4)(B) does not apply. Plaintiff continues to define the putative class broadly—not as "patients," but as "[a]ll individuals" nationwide who visited Overlake's public website, regardless of any relationship to the hospital. As a result, the putative class necessarily includes citizens of states other than Washington, including (without limitation) nursing and college students, referring providers, job seekers and candidates, vendors, payors, professionals temporarily residing in Washington for work, prospective patients, friends and family members of patients, employees, competitors, researchers, academic scholars, and individuals traveling from neighboring states to access Overlake's services. Declaration of MaryBeth Dagg ("Dagg Decl.") ¶¶ 7, 11.

Plaintiff concedes she bears the burden of establishing that at least two-thirds of the putative class are Washington citizens under 28 U.S.C. § 1332(d)(4)(B). Yet her argument rests on speculation and conjecture, not evidence. Plaintiff assumes—without any factual support—that Overlake's "patients" primarily reside in Washington. But as mentioned above, the putative class encompasses all visitors to Overlake's public website, not just patients. Regardless, Plaintiff cannot establish that two-thirds of the putative class are Washington citizens. It is not possible for Overlake—or any party—to determine the citizenship of individuals who merely visited Overlake's public website. Declaration of Anthony Caratao ("Caratao Decl.") ¶¶ 5-12. Thus, jurisdictional discovery would serve no useful purpose and should be denied.

For these reasons, Overlake respectfully requests that the Court deny Plaintiff's Motion for Remand *with prejudice*.

## II. RELEVANT BACKGROUND

### A. Procedural Background

As previously noted, Plaintiff filed this action in King County Superior Court after receiving unfavorable rulings on Overlake's motions to dismiss in the *Nienaber* Action, which she then voluntarily dismissed. *See supra* p. 1. As in the *Nienaber* Action, Plaintiff's current complaint alleges that Overlake owns and operates the public website www.overlakehospital.org (the



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

"Website"), and that certain software implemented on the Website permits limited information to be transmitted from a user's web browser to third parties such as Meta and Google through the Meta Pixel and Google Analytics tools. Dkt. No. 1, Ex. D ¶¶ 1, 4; *id*. at p. 1.

In both iterations of the *Nienaber* complaints, Plaintiff repeatedly invoked CAFA as the basis for federal subject matter jurisdiction. Vitruk Decl., Ex. A, Compl. ¶ 45; Ex. B, SAC ¶ 64. In those complaints—as in the present one—Plaintiff defined the putative class broadly as "[a]ll individuals" nationwide who visited Overlake's Website and "whose Private Information" was allegedly "disclosed to a third party without authorization or consent as a result of visiting Defendant's Website." Dkt. No. 1, Ex. D ¶ 122; Vitruk Decl. Ex. A ¶ 138, Ex. B ¶ 164.

Consistent with Plaintiff's own prior representations regarding CAFA jurisdiction and her broad class definition encompassing individuals nationwide, Overlake properly removed this action to this Court on September 5, 2025. Dkt. No. 1.

### B. Many Non-Washington Residents Access Overlake's Public Website

Overlake is a nonprofit healthcare organization based in Washington. Dkt. No. 1, Ex. D ¶ 37. Its website and healthcare services are accessible to individuals in all 50 states. Dkt. No. 1, ¶ 22. Overlake has received national recognition for excellence in maternity care, specialized treatment, and high-quality heart failure and stroke care. *Id*. ¶ 23; *see also* Dagg Decl. ¶ 6. More specifically, Overlake was recognized as a Best Regional Hospital by U.S. News & World Report in its Best Hospitals 2025-26 rankings and national recognition for heart and vascular care, maternity care, outpatient orthopedic surgery, bariatric surgery, and gynecological surgery. Dagg Decl. ¶ 6.

Because of its national reputation, Overlake attracts to its Website a wide range of non-Washington residents, including nursing and college students, referring providers, job seekers and candidates, vendors, payors, professionals temporarily residing in Washington for work, prospective patients, friends and family members of patients, employees, competitors, researchers, and academic scholars. *Id*. ¶ 7. Out-of-state users can access every page of Overlake's Website, and several sections are expressly directed toward "visitors" from outside the local community. *Id*.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

¶ 8. For example, the Website provides lodging information specifically for "visitors" traveling to the hospital: https://www.overlakehospital.org/visit/visitors-guide/lodging. *Id*. ¶ 9.

Further, Overlake has patients in all 50 States and patients in at least 15 unique countries. *Id*. ¶ 10. Overlake also routinely provides care to individuals who travel from neighboring states such as Oregon and Idaho, as well as from Canada. *Id*. ¶ 11.

### C. **Overlake Does Not Possess Information Capable Of Proving Or Disproving The Residency Of Its Website Users**

Overlake does not have the ability to determine the citizenship of visitors to its Website. Caratao Decl. ¶¶ 5, 6, 12. Overlake does not possess any information about Website visitors that could confirm or even reasonably suggest their state of residency. *Id*. ¶ 6. Nor can Overlake determine any user's physical address with certainty. *Id*.

To the extent an Internet Protocol ("IP") address may be available for a Website visitor, that information does not establish residency or citizenship. *Id*. ¶ 7. An IP address reflects an access point to the internet, typically through a modem. *Id*. ¶ 8. Thus, all devices accessing a website from the same network would typically all have the same IP address. *Id.* ¶ 9.

For example, a user connecting to a hotel's Wi-Fi will receive a new IP address different from their home network, and a virtual private network ("VPN") user can appear to be accessing the internet from virtually any location worldwide. *Id*. ¶ 10. An IP address may also change depending on other factors or conditions, including proxy servers, dynamic IP assignments, or other network configurations. *Id*. ¶ 11. Accordingly, an IP address cannot be used to determine with any degree of reliability where a Website visitor resides or to establish the citizenship of any member of the putative class. *Id*. ¶ 12.

## III. **LEGAL STANDARD**

### A. **Judicial Estoppel**

"Judicial estoppel is an equitable doctrine invoked by a court at its discretion." *U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (internal citation and quotations omitted). In determining whether estoppel applies courts consider "(1) whether a party's later position is clearly



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

inconsistent with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to derive an unfair advantage or impose an unfair determination on the opposing party." *Id.* (internal citation and quotations omitted). Importantly, judicial estoppel "seeks to prevent the *deliberate* manipulation of the courts and therefore should not apply when a party's prior position was based on inadvertence or mistake." *Id.* (internal citation and quotations omitted). This is because the "purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Iglesias v. Welch Foods Inc.*, No. 17-cv-00219-TEJ, 2017 WL 1227393, at *2 (N.D. Cal. Apr. 4, 2017) (internal citation and quotations omitted); *see also Azod v. Robinson*, No. 22-56186, 2024 WL 163371, at *1 (9th Cir. Jan. 16, 2024) (judicial estoppel protects "the dignity of judicial proceedings from litigants playing fast and loose with the courts.") (internal citation and quotations omitted).

**B. <u>CAFA And The Mandatory ("Home State") And Discretionary Exceptions</u>**

Federal courts shall have original jurisdiction over a class action under CAFA if (1) the putative class action is comprised of one hundred (100) or more putative class members; (2) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000; and (3) "minimal diversity" of citizenship exists, *i.e.*, any member of the putative class is a citizen of a different state than that of a defendant. *See* § 1332(d)(1)-(2)(A); *Yocupicio v. PAE Grp., LLC*, 795 F.3d 1057, 1059 (9th Cir. 2015) (quotations and citation omitted). Moreover, "Congress passed CAFA with the 'overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications.'" *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017) (citation omitted); *see also Bridewell-Sledge v. Blue Cross of Cal.*, 798 F.3d 923, 929 (9th Cir. 2015) ("CAFA should be read 'with a strong preference that interstate class actions should be heard in federal court if properly removed by any defendant.'") (citation omitted).

Under the mandatory home-state exception to CAFA jurisdiction, the Court shall decline to exercise jurisdiction only if Plaintiff can show by a preponderance of the evidence that "'***two-thirds or more*** of the members of all proposed plaintiff classes in the aggregate, and the primary



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

defendants, are citizens of the State in which the action was originally filed.'" *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1023 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)(4)(B)) (emphasis added).

Under the discretionary exception to CAFA jurisdiction under 28 U.S.C. § 1332(d)(3), the Court ***may*** "in the interests of justice and looking at the totality of the circumstances," decline to exercise CAFA jurisdiction when (1) "greater than one-third but less than two-thirds of the members" of the putative class and (2) the "primary defendants," are citizens of the state where the action was originally filed. *Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2018 WL 6267829, at *3 (N.D. Cal. June 26, 2018) (quotations and citation omitted).

"[T]he party seeking remand bears the burden to prove an exception to CAFA's jurisdiction," including the applicability of the discretionary and mandatory exceptions at issue in this motion. *Brinkley*, 873 F.3d at 1024.

### C. Jurisdictional Discovery

Courts have found that jurisdictional discovery is not permitted "where it would amount to a mere 'fishing expedition.'" *Johnson v. Mitchell*, No. CIV S-10-1968 GEB GGH PS, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012) (citation omitted). Likewise, courts routinely deny motions for jurisdiction discovery where it would be futile. *Martinez v. Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("[A] refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.").

"[T]he party seeking discovery bears the burden of showing that the denial of discovery results in actual and substantial prejudice to it." *Twentieth Century Fox Int'l Corp. v. Scriba*, 385 F. App'x 651, 653 (9th Cir. 2010) (quotations omitted).

## IV. ARGUMENT

### A. After Previously And Repeatedly Asserting CAFA Jurisdiction In This Case, Plaintiff Should Be Estopped From Now Arguing CAFA Does Not Apply

Overlake respectfully urges this Court to use its discretion and invoke the doctrine of judicial estoppel to prevent Plaintiff's blatant forum shopping and attempt to evade this Court's



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

jurisdiction. All three judicial estoppel factors are satisfied here. *Ibrahim*, 522 F.3d at 1009.

First, Plaintiff's current position—that CAFA jurisdiction does not apply—is "clearly inconsistent with [her] original position" in the *Nienaber* Action. *Id.* Plaintiff (a) previously invoked CAFA as the basis for subject matter jurisdiction in the *Nienaber* Action, which involved the same defendant, alleged facts, and putative class; (b) litigated under that jurisdiction for nearly two years; and (c) only after receiving unfavorable rulings on Overlake's motions to dismiss, now asserts the *opposite* position to avoid this Court's jurisdiction.[3]

Second, Plaintiff had "successfully persuaded the [C]ourt of [her] earlier position" by repeatedly asserting CAFA jurisdiction and proceeding in federal court for 19 months through multiple rounds of briefing and amended pleadings. *Ibrahim*, 522 F.3d at 1009. Indeed, "[f]or the purposes of judicial estoppel, our circuit does not require that the prior court explicitly adjudicate an issue—but merely 'accept[]' a party's previous position." *Azod*, 2024 WL 2024 WL 163371, at *2 (quoting *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) (finding that the court necessarily "accepted" the party's representations that the case was properly filed by granting a motion to stay, receiving several joint status reports, and presiding over the case for three years)); *see also Reddy v. Morrisey*, No. 3:18-CV-00938-YY, 2020 WL 8268884, at *10 (D. Or. Nov. 30, 2020) ("It is not necessary that plaintiff 'obtain an actual judgment based on [his] prior statement' or that the court 'rule[] upon the truth of plaintiff's claim.'") (citation omitted). Here, this Court accepted Plaintiff's position by allowing the case to proceed, ordering and receiving a Rule 26(f) joint report, adjudicating two motions to dismiss, permitting multiple amendments, and presiding over the matter from August 3, 2023 through March 21, 2025. *See generally Nienaber* Action.

Third, remanding this action would grant Plaintiff an "unfair advantage" by enabling her to forum shop after adverse rulings. *Ibrahim*, 522 F.3d at 1009. Indeed, courts routinely hold that forum shopping constitutes an unfair advantage and abuses the judicial process. *See e.g., Iglesias*,

---

[3] *Compare* Vitruk Decl. Exs., A & B (*Nienaber* Action complaint and SAC) to Dkt. No.1, Ex. D (removed state court complaint).



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

2017 WL 1227393, at *3 ("allowing the Defendants to put forth their clearly inconsistent position here would permit them to forum shop which constitutes an 'unfair advantage.'"); *Galitski v. Samsung Telecommunications Am., LLC*, No. 8:CV-12-00903-CJC (JPRx), 2012 WL 12830000, at *3 (C.D. Cal. Nov. 21, 2012) ("Plaintiff's forum shopping is unfair to Defendant, abuses the judicial process, and wastes the resources of the parties and the federal courts.").

Accordingly, to prevent forum shopping and "the deliberate manipulation of the courts", this Court should invoke judicial estoppel and preclude Plaintiff from now disputing CAFA jurisdiction. *Ibrahim*, 522 F.3d at 1009.

### B. The Discretionary And Mandatory Exceptions To CAFA Do Not Apply

#### *1. Plaintiff Has Not And Cannot Meet Her Burden To Prove That Any Exception To CAFA Applies*

Plaintiff moves for remand under both the mandatory and discretionary exceptions to CAFA, both of which hinge on ***putative class member citizenship***. *Serrano*, 478 F.3d at 1023 (two thirds threshold requirement under mandatory home-state exception); *Garcia,* 2018 WL 6267829 at *3 (between one third to two thirds under discretionary exception).

"To be a citizen of a state, a natural person must first be a citizen of the United States .... [Her] state citizenship is then determined by her state of domicile[.]" *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). One's domicile is her "permanent home"—that is, where (i) she resides, (ii) "with the intention to remain or to which she intends to return." *Id.*

Plaintiff bears the burden to prove that two thirds or one third of the "individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent as a result of using [Overlake's] Website", *i.e.*, the putative class, *were actually Washington citizens*. Dkt. No. 1, Ex. D ¶ 122. *Ali v. Setton Pistachio of Terra Bella Inc.*, No. 1:19-cv-00959-NONE-BAM, 2021 WL 1187264, at *2 (E.D. Cal. Mar. 30, 2021) ("*Ali II*").

To meet that burden, Plaintiff must make an "evidentiary showing . . . sufficient to satisfy a 'preponderance of the evidence standard.'" *Garcia*, 2018 WL 6267829, at *3 (quoting *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 883 (9th Cir. 2013)). "It is not enough for



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

plaintiff to point out what she believes is logical." *Ali II*, 2021 WL 1187264, at *2. For the discretionary exception, Plaintiff must show that it is "far more likely than not" that the requisite percentage of putative class members are Washington citizens. *Ali v. Setton Pistachio of Terra Bella Inc.*, No. 1:19-cv-00959-NONE-BAM, 2021 WL 389659, at *2 (E.D. Cal. Feb. 4, 2021), *report and recommendation adopted*, No. 1:19-cv-00959 NONE-BAM, 2021 WL 1187264 (E.D. Cal. Mar. 30, 2021) (one third under discretionary exception). Similarly, for the mandatory exception, Plaintiff must show that it is "more likely than not" that the requisite percentage of putative class members are Washington citizens. *Cruz v. Gonzalez*, No. 1:23-cv-00037-KES-SKO, 2025 WL 267805, at *9-10 (E.D. Cal. Sept. 10, 2025).

Here, Plaintiff has failed to present ***any*** independent evidence showing ***any*** visitors to Overlake's Website are Washington citizens. Plaintiff simply argues the discretionary exception applies because "the facts currently known dictate that at least one-third of the putative class members are" citizens of Washington. Mot. at 7:18-19 (emphasis omitted). In support of this statement, Plaintiff cites to an unpublished, out-of-circuit case from the Southern District of Ohio where "60.34% of all [website] visits" to the hospital website purportedly "originated from devices located in the state that the hospital was headquartered in." *Id*. at n. 10 (citing to *Doe v. Christ Hosp*., No. 1:23-CV-27, 2023 WL 4757598 at *4 (S.D. Ohio July 26, 2023)). Plaintiff's reliance on *Christ Hospital* is remarkable because that court disregarded the "60.34%" statistic as unreliable. *Id*. Unlike here, the *Christ Hospital* putative class was limited to *actual patients*, and the court explained that "patient datasets" that "tie back to physical Ohio addresses" are "more reliable" than the "60.34%" statistic, and thus the Court did not rely on it. *Id*. Regardless, Plaintiff's reliance on inapposite (and disregarded) data in an Ohio case does nothing to meet Plaintiff's burden to prove that one third (or two thirds) of the visitors to Overlake's Website are Washington citizens. Plaintiff cites no authority holding that visits "originat[ing] from devices located in the state that the hospital was headquartered in" may confirm citizenship. Mot. at 7, n. 10.

Plaintiff also points to a 2021 study calculating patient travel distance to hospitals, as purported evidence. *Id.* at 7:21-8:2. But again, Plaintiff has defined her putative class as not limited



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

to patients, but rather "[a]ll individuals" who visited Overlake's Website. Dkt. No. 1, Ex. D ¶ 122. Plaintiff's repeated references to "patients" and not visitors to Overlake's Website, *i.e*., the actual putative class members, amount to a red herring.

Plaintiff's reliance on *In re Scripps Health Data Sec. Breach Litig.*, 581 F.Supp. 3d 1225 (S.D. Cal. 2022) is unavailing. *In re Scripps* involved *patient* data and the defendant was able to determine that 96.3% of the patients had a physical California address. *Id*. at 1230. Unlike in *Scripps*, Plaintiff's putative class definition is much broader and involves all individuals who browsed Overlake's public Website, and Overlake is unable to determine their physical addresses. And *Naki v. Hawai'i,* No. CV 23-00435 JAO-BMK, 2024 WL 4456803 (D. Haw. Apr. 5, 2024)—which emphasized that a party fails to meet the burden for remand when relying solely on a proposed class definition without supporting evidence—supports *Overlake*'s position. *Id.* at *10.

At best, Plaintiff's Motion to Remand contains nothing more than "flimsy" evidence and concomitant "guesswork", which courts have routinely rejected as insufficient. *See, e.g.*, *Hooks v. Dignity Health*, No. CV 22-07699 DSF (PDx), 2022 WL 17968833, at *2 (C.D. Cal. Dec. 27, 2022) (rejecting plaintiff's "evidence" in the form of "authenticated website printouts to show that [defendant] ha[d] a presence in twenty-three counties in California", and "exhibits showing the population of California" as insufficient to establish California citizenship of the putative class for purposes of mandatory *or* discretionary exception under CAFA).

*Jones v. Tonal Sys., Inc*., No. 3:23-CV-1267-JES-BGS, 2024 WL 400182 (S.D. Cal. Feb. 2, 2024) is instructive. The *Jones* plaintiff defined the putative class as "all persons within . . . California" whose "communications were recorded and/or eavesdropped" by a third party, and tried to "infer" that, because the defendant makes "home fitness" equipment, more than two thirds of people accessing the defendant's customer service chat feature while in California also reside and are domiciled there. *Id*. at *2. The court rejected that argument, holding that although the inference was "sensible," the factual allegations in the complaint and motion to remand were insufficient to meet the plaintiff's burden under the CAFA home-state exception. *Id*. As the court explained, "[f]inding that the home state exception's two-thirds requirement has been met in this



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

case would amount to 'guesswork.'" *Id*. The same is true here—if not more so. Plaintiff's Motion to Remand and her even broader putative class definition require impermissible speculation about citizenship, and thus fall far short of satisfying the home-state exception.

Plaintiff admits that "Defendant cannot produce the sort of evidence" necessary to refute "th[e] proposition" that "most individuals using the website of a local medical provider centrally located within a state will be citizens of that state." Mot. at 5:21-6:2. Plaintiff is correct that it is simply not possible for Overlake to prove or disprove the citizenship of any individual who visits its Website. Caratao Decl. ¶¶ 5, 6, 12. But that impossibility only underscores the flaw in Plaintiff's position. Overlake does not bear the burden of proving that a CAFA exception does not apply—it is Plaintiff who bears the burden of proving that a CAFA exception *does* apply. *Brinkley*, 873 F.3d at 1024.

Plaintiff cannot meet that burden. Overlake possesses no information about Website visitors that could confirm or even reasonably suggest their citizenship. Caratao Decl. ¶ 6. To the extent any IP address information may exist, such data cannot establish residency or citizenship. An IP address reflects an access point to the internet, typically through a modem. *Id*. ¶ 8. Thus, all devices accessing a website from the same network would typically all have the same IP address. *Id*. ¶ 9. An IP address may change for any given user depending on a multitude of factors or conditions, and therefore cannot be used to determine with any degree of reliability where any given Website visitor resides. *Id*. ¶¶ 10-12.

Moreover, Overlake's reputation and services extend far beyond Washington's borders. Dagg Decl. ¶¶ 6, 7, 11. Overlake is a nationally recognized healthcare provider whose Website attracts a diverse audience of non-Washington residents, including nursing and college students, referring providers, job seekers and candidates, vendors, payors, professionals temporarily residing in Washington, prospective patients (including those traveling from neighboring states and Canada), friends and family of patients, employees, competitors, and academic researchers. *Id*. ¶ 7. This broad reach is further evidenced by the fact that Overlake has patients in all 50 States and patients in at least 15 unique countries. *Id*. ¶ 10.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

### 2. *The Court Should Decline To Invoke The Discretionary Exception*

Only if the Court finds that Plaintiff has met her threshold burden to prove that over one-third of putative class members are Washington residents, may the Court proceed to determining whether discretionary remand is appropriate based on six "interest of justice" factors discussed below, none of which is dispositive. *See, e.g.*, *Sanchez v. Aviva Life & Annuity Co.*, No. CIV. S–09–1454 FCD/DAD, 2009 WL 10694222, at *4 (E.D. Cal. July 16, 2009) ("Indeed, 'consideration of the various factors is not implicated unless and until it is shown that the [discretionary] exception's initial requirements' are satisfied. . . ., *plaintiff* provides no evidence regarding the citizenship of the putative class members, and, thus, he fails to satisfy the first threshold requirement of the discretionary exception.") (citation omitted).

The six "interests of justice" factors are as follows: (1) "whether the claims asserted involve matters of national or interstate interest" (the "National Interest Factor"); (2) "whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States" (the "Governing Law Factor"); (3) "whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction" (the "Artful Pleading Factor"); (4) "whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants" (the "Nexus With Parties or Harm Factor"); (5) "whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States" (the "Dominance of In-State Class Members Factor"); and (6) "whether, during the 3-year period preceding the filing of the class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed" (the "Existence of Prior, Related Lawsuits Factor"). *Garcia*, 2018 WL 6267829, at *3 (quoting 28 U.S.C. § 1332(d)(3)).

While courts "generally defer to a plaintiff's forum choice…, such reference is not automatic – particularly where, as here, remand would result in duplicative and costly litigation." *Henry v. Warner Music Grp. Corp.*, No. 13 Civ. 5031 (PGG), 2014 WL 1224575, at *7 (S.D.N.Y.



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Mar. 24, 2014) (denying motion to remand because it "would not serve the interests of justice.").

Given CAFA's "primary objective" of ensuring federal-court consideration of interstate cases of national importance, the Court may still exercise jurisdiction even where four or more factors weigh in favor of remand but retaining jurisdiction would serve CAFA's aims. *Id.* at *7 (refusing to remand under discretionary exception even where 4 out of 6 factors weighed in favor of plaintiff but where the National Interest and Artful Pleading Factors weighed in favor of defendants, because "th[ose] factors weigh[ed] more heavily in the balance"); *Ramirez v. Oscar De La Renta, LLC*, No. 16-CV-7855 (RA), 2017 WL 2062960, at *8 (S.D.N.Y. May 12, 2017) ("Removal may be appropriate even where the majority of these factors favor Plaintiff.") (citation omitted).

First, the National Interest Factor weighs in favor of Overlake. Contrary to Plaintiff's claim that "the claims do not involve matters of national or interest interests" (Mot. at 9:3-4), an action may be of "national importance" when plaintiffs do not limit the putative class to the state of filing and state of citizenship of the defendant. *Melissa D. Duflock Revocable Tr. v. Chevron Corp.*, No. CV 13–03177 SJO (SHx), 2013 WL 4236397, at *6 (C.D. Cal. Aug. 14, 2013) ("[I]n passing CAFA and granting additional federal jurisdiction to more class actions Congress was particularly concerned that cases possibly affecting the interests of people regionally or nationally were being tried and determined in individual state courts."); *see also Henry*, 2014 WL 1224575, at *7 ("There is no dispute that this action qualifies as an 'interstate' case; Plaintiff chose not to limit the putative class to New York citizens."). Here, it is clear that Plaintiff did not limit the putative class to only Washington citizens: the putative class definition includes *all individuals* who accessed Overlake's public Website. Dkt. No. 1, Ex. D ¶ 122. It is also undeniable that alleged web tracking class actions are of national importance.

Second, the Governing Law Factor weighs in Overlake's favor. Although Plaintiff brings only Washington state law claims, her action implicates and involve interpretation of federal laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). *See e.g.*, Dkt. No. 1, Ex. D ¶ 9 ("HHS has expressly stated that Overlake's implementation of Tracking



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Technology violates HIPAA Rules"); *Id.* ¶ 115 ("Defendant's business practices violated HIPAA and industry privacy standards."). Accordingly, notwithstanding Plaintiff's state-law claims, the Governing Law factor weighs in favor of Overlake. *See Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F.Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("Although she presents the attack through the vehicle of California's consumer protection law, the same theory would support liability under other state's consumer protection laws as well and is based on an essentially federal question regarding the extent of Kaiser's secondary payer rights."); *Dutcher v. Matheson*, 16 F.Supp. 3d 1327, 1331, 1339 (D. Utah 2014) (Governing Law Factor weighed against remand when matter involved interpretation of federal law and "potentially implicate[d] the law of other states").

Third, the Artful Pleading Factor weighs in favor of Overlake. Plaintiff admits she previously filed the nearly identical *Nienaber* Action in this Court (asserting CAFA jurisdiction), received unfavorable rulings, and is now forum shopping in search of better results. *See supra* Sec. IV.A.

Fourth, the Nexus With Parties or Harm Factor weighs in favor of Overlake. Although Overlake is based in Washington, the alleged "harm" here stems not from alleged Washington patients browsing on Overlake's Website but from alleged web tracking on Overlake's public Website that allegedly impacted "all individuals" nationwide. *See* Dkt. No. 1, Ex D, ¶ 122.

The Dominance of In-State Class Members Factor turns on whether the numbers of putative Washington citizen-class members are "substantially larger" than the numbers of putative citizen-class members of any other state. Plaintiff here has not and cannot establish what percentage of the class are Washington citizens, so this factor weighs in favor of Overlake (or, at worst, is null). *In re Blackbaud, Inc.*, No. 3:21-cv-00989-JMC, 2021 WL 1940581, at *6 (D.S.C. May 14, 2021) (factor weighed in favor of removal when "citizenship of class members [wa]s . . . unclear because the class definition [wa]s not limited by definition to Minnesota residents, the original Complaint d[id] not allege the citizenship of any of the 'thousands' of class members except for Peterson, and Peterson ha[d] introduced no evidence of the class members' citizenship"); *Dutcher*, 16 F.Supp. 3d at 1331, 1339 (factor weighed against remand when "the



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

percentage of the proposed class who [wer]e citizens of Utah" was "unclear" when plaintiffs "allege[d], on information and belief, that more than 75% of the proposed class [wer]e citizens of Utah"); *Ramirez*, 2017 WL 2062960, at *8 ("[O]n the present record, it is not clear whether the number of New York citizens in the proposed class is 'substantially larger than the number of citizens from any other State,' or whether the citizenship of non-New York members of the proposed class is 'dispersed among a substantial number of States.'").

The Existence of Prior, Related Lawsuits Factor also weighs in favor of Overlake. This factor is aimed at "clustering like and ongoing class actions together 'on a coordinated basis pursuant to the federal courts' multidistrict litigation process.'" *Garcia*, 2018 WL 6267829, at *4; *see also Alvarez v. XPO Logistics Cartage, LLC*, No. CV 18–03736 SJO (AS), 2018 WL 3203086, at *4 (C.D. Cal. June 29, 2018) (discussing similar prior litigation exception under § 1332(d)(4) and stating that "the purpose of the prior litigation exception is to prevent a situation where there are multiple, uncoordinated, parallel class actions proceeding in state court and to instead create a central, federal venue whereby these litigations may be combined"); *Dutcher*, 16 F.Supp. 3d at 1339 (Existence of Prior, Related Lawsuits Factor weighed against remand when "[i]n the 3-year period prior to filing of th[e] suit, a prior class action was brought bringing similar claims and multiple similar class actions ha[d] been brought since that time").

Plaintiff argues that the *Nienaber* Action "does not constitute an 'other class action' under CAFA." Mot. at 9:15-16. Plaintiff's reliance on *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497 (3d Cir. 2013) is misplaced. There, the parties wanted to add additional defendants to the first filed lawsuit and instead of destroying diversity, the plaintiff voluntarily dismissed the first filed action so the parties could assert their claims against the additional defendants in a single forum. *Id.* at 509. The court found that it was not an "other class action" because "[t]reating the second filed action in this way is consistent with the goal of the local controversy exception of ensuring that the defendants are not subject to similar claims in different forums and allowing all claims against them to proceed in a coordinated fashion." *Id.* Unlike in *Vodenichar*, Plaintiff is not coordinating her claims against Overlake. Plaintiff instead voluntarily dismissed the *Nienaber*


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Action after receiving several unfavorable rulings, and then refiled a virtually identical action in state court in hopes of a more favorable ruling. This is the exact opposite of the goal of the local controversy exception that the court in *Vodenichar* recognized.

The discretionary factors weigh in favor of Overlake. The Court should deny the Motion to Remand based on the discretionary exception.

### C. <u>Plaintiff's Request For Jurisdictional Discovery Should Be Denied</u>

The Court should deny Plaintiff's request for jurisdictional discovery. Jurisdictional discovery would be futile because the ability to prove or disprove the citizenship or continual residency of visitors to Overlake's Website is not possible. Caratao Decl. ¶¶ 5, 6, 12. *Martinez*, 764 F.3d at 1070 ("[A] refusal [to grant discovery] is not an abuse of discretion when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction.") (quotation omitted); *see also Red Hat, Inc. v. VirtaMove, Corp.*, 785 F.Supp. 3d 603 (N.D. Cal. 2025) (denying motion for jurisdictional discovery as futile because it would not reveal facts sufficient to show subject matter jurisdiction); *Hicks v. Grimmway Enters., Inc.*, No. 22-CV-2038 JLS (DDL), 2023 WL 3319362, at *14 (S.D. Cal. May 9, 2023) (denying the plaintiff's motion for jurisdictional discovery as futile in CAFA case because, like Overlake here, the *Hicks* defendant did not possess helpful data on jurisdictional questions).

Plaintiff claims without any factual support that the requested discovery "would include information about the citizenship of [Overlake's] patients, the identity of individuals who visited its website, the tracking tools that were installed on the website, and the device location of users who visited its website." Mot. at 10:7-10. Plaintiff inexplicably concludes that these vague categories of discovery will allow the Court to somehow make "reasonable inferences" about the proposed class members' citizenship. *Id*. This is simply false.

First, Plaintiff's class is not limited to Overlake's "patients" but instead includes "[a]ll individuals" who visited Overlake's Website. Dkt. No. 1, Ex. D ¶ 122. Thus, Overlake's patient population is *not* indicative of the putative class. Second, Overlake does not have the ability to "identify" the specific individuals who visited its public Website. Caratao Decl. ¶¶ 5-12. In fact,



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

Overlake cannot determine whether any visitor to its Website actually resides in Washington, for the reasons detailed *infra* and in the Caratao Declaration. *Id*. This Court has also previously held that public browsing information is not personally identifiable information or protected health information. *Nienaber*, 733 F.Supp. 3d at 1082 ("However, where nothing but browsing activity on a publicly available website is transmitted, courts within this circuit have held that the URLs, or the content of the pages located at those URLs, [do not relate] to the past, present, or future physical or mental health or condition of an individual.") (citations omitted) (quoting cases).).

Plaintiff also cites to inapposite case law showing that courts have permitted jurisdictional discovery in situations where the plaintiff specifically can identify jurisdictional discovery that would be in the defendant's possession and/or which could demonstrate citizenship of the proposed class – none of which Plaintiff is able to do here. *Cf. King v. Great Am. Chicken Corp., Inc*., 903 F.3d 875, 877 (2018) (plaintiff sought jurisdictional discovery "in the form of names, last-known addresses, telephone numbers, and email addresses for all putative class members, as well, as information regarding the percentage of the putative class members whose last-known address was in California."); *Mondragon*, 736 F.3d at 885 (court found that car purchase records were likely to include evidence regarding putative class members' states of residency, e.g., mailing or billing information); *Herrick v. TTE Tech., Inc*., No. 5:25-CV-00945-SB-SP, 2025 WL 1787157, at *1 (C.D. Cal. June 27, 2025) (unlike here, not only was the class identifiable, but the defendant had "at least some physical addresses of class members").

*Jones*, 2024 WL 400182 at **3-4 is again instructive here. The plaintiff requested three categories of discovery that the court described as "a problem of aggregation and set logic," which also describes Plaintiff's request here. *Id*. at *4. In denying the request for jurisdictional discovery, the *Jones* court explained that it "***does not amount to the required jurisdictional showing. Instead, it would still invite the Court to speculate (or 'guess') both on the reliability of IP addresses to establish the physical location of a Tonal/Drift user and on the domiciliary status of Tonal customers with California addresses.***" *Id*. (emphasis added). "If the best version of jurisdictional discovery would not advance Plaintiff's required showing under § 1332(d)(4), and simultaneously


BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

would at least begin to resemble the sort of burdensome undertaking disfavored by the CAFA statute and accompanying Senate Report, then the Court can safely in its discretion deny the request." *Id*. The *Jones* court thus denied the request for jurisdictional discovery. *Id*. This Court should deny Plaintiff's request for similar reasons.

Plaintiff separately fails to demonstrate any "actual and substantial prejudice to [her]" in the absence of jurisdictional discovery. *Twentieth Century Fox Int'l Corp.*, 385 F. App'x at 653. Regardless, because jurisdictional discovery would be futile, the Court may reasonably disregard any prejudice factor. *Jones*, 2024 WL 400182 at **3-4; *see also Arizona v. Mayorkas*, 600 F.Supp. 3d 994 (D. Ariz. 2022) (explaining the plaintiff could not suffer prejudice due to a denial of jurisdictional discovery when there was no reasonable probability of a different outcome had discovery been allowed, and therefore no prejudice).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Overlake respectfully requests that the Court deny Plaintiff's Motion to Remand and For Leave to Conduct Discovery.

/ / /



BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4076
Telephone: (206) 332-1380

DATED: October 27, 2025

Respectfully submitted,

*s/Alexander Vitruk*

Alexander Vitruk, WSBA #57337
Logan F Peppin, WSBA #55704
**BAKER & HOSTETLER LLP**
999 Third Avenue, Suite 3900
Seattle, WA 98104
Tel: 206-332-1380
Emails: avitruk@bakerlaw.com
lpeppin@bakerlaw.com

Paul G. Karlsgodt, WSBA #40311
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Tel: 303-861-0600
Email: pkarlsgodt@bakerlaw.com

*Attorneys for Defendant Overlake Medical Center & Clinics*

I certify that this document contains 6,470 words, in compliance with the Local Civil Rules.

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2025, a true and correct copy of the foregoing document was served via CM/ECF and/or e-mailed to counsel below:

Jason T. Dennett, WSBA #36080
Rebecca L. Solomon, WSBA #51520
**TOUSLEY BRAIN STEPHENS PLLC**
1200 Fifth Avenue, Suite 1700
Seattle, WA 98101
Tel: (206) 682-5600
Emails: jdennett@tousley.com
rsolomon@tousley.com

Joseph M. Lyon (*pro hac vice forthcoming*)
Clint Watson (*pro hac vice forthcoming*)
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, Ohio 45208
Tel: (513) 381-2333
Emails: jlyon@thelyonfirm.com
cwatson@thelyonfirm.com

Terence R. Coates (*pro hac vice forthcoming*)
Dylan Gould (*pro hac vice forthcoming*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, OH 45028
Tel: (513) 651-3700
Emails: tcoates@msdlegal.com
dgould@msdlegal.com

Bryan L. Bleichner (*pro hac vice forthcoming*)
Philip J. Krzeski (*pro hac vice forthcoming*)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Tel: (612) 339-7300
Emails: bbleichner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

*Counsel for Plaintiff and the Putative Class*

Gary M. Klinger (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Email: gklinger@milberg.com

Alexandra M. Honeycutt (*pro hac vice forthcoming*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (866) 252-0878
Email: ahoneycutt@milberg.com

*s/ Cheryl A. Phillips*
Cheryl A. Phillips
cphillips@bakerlaw.com