Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OVERLAKE HOSPITAL MEDICAL CENTER,<br><br>Defendant. | NO. 2:25-cv-01711-RAJ<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO REMAND**<br><br>**NOTE ON MOTION CALENDAR: November 10, 2025** |

## I. INTRODUCTION

This case involves an exclusively Washington hospital that conducts business only in the Puget Sound area of Washington and its alleged transmission of protected health information that users of its Website[1] submitted in the process of seeking medical treatment from Defendant. The matter involves the application of Washington law. Defendant seeks to broaden the Class definition and thereby bar state jurisdiction by arguing that the definition encompasses all users of the Website. In doing so, Defendant has conveniently omitted that the proposed class definition requires Private Information (including protected health information) to have been disclosed for each respective class member. Because class members must be identifiable, the proposed class

[1] As defined in the Complaint.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

necessarily relates to patients who have used Defendant's Website and are capable of being identified – not just any Website visitor. Plaintiff readily concedes that this Court possesses CAFA jurisdiction based on minimal diversity. But as explained below, Plaintiff contends that either the mandatory or discretionary exceptions apply so that this action involving local issues and Washington law is decided in a Washington state court. To the extent that the Court does not believe that it can make the determination on the papers, Plaintiff contends that discovery will provide the answer.

## II. LAW AND ARGUMENT

### A. The Exceptions to CAFA Apply to Plaintiff's and Class Members' Claims

Defendant argues that Plaintiff has failed to present any evidence that any visitors to Defendant's Website are Washington citizens. *See* Dkt. #17, Response, at 10:10-11. To start, nearly all of Defendant's arguments are based on the faulty premise that the proposed class consists of all "users" or "visitors" of Defendant's Website. *See* Response at 4–5 ("visitors"), 10 (same), 11 (similar), 12 (same); *see also* Dkt. #20, Declaration of Anthony Caratao ("Caratao Decl.") at ¶¶ 5–6; Dkt. #19, Declaration of MaryBeth Dagg ("Dagg Decl.") ¶ 7–8. But this framing ignores the other 223 paragraphs of the Complaint and the totality of Plaintiff's factual allegations. *See Doe v. Cnty. of Santa Clara*, 2024 WL 4700635, at *2 (N.D. Cal. 2024) (finding the scope of the class is contextualized by the other allegations in the complaint: "[w]hile it is true that plaintiff's class definition does not mention and is not expressly limited to California citizens, the scope of the class is contextualized by the admissions in the FAC."). When the proper Class definition is applied, Plaintiff meets the requirements for CAFA exceptions.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

**1. The Class Definition and Citizenship**

The Class is defined as "[a]ll individuals residing in the United States ***whose Private Information[2] was disclosed*** to a third party without authorization or consent as a result of using Defendant's Website." Dkt. #1-5, CAC, ¶ 122 (emphasis added). Plaintiff's Complaint explains how users' Private Information is impermissibly disclosed due to Defendant's surreptitious data sharing practices through the use of Tracking Technologies throughout its Website. *See* CAC ¶¶ 53–95. Additionally, it is alleged that Defendant included Tracking Technology on the buttons on its Website that a user clicks to reach the ***patient*** portal, which is for patient only use. *Id.* at ¶93. Defendant's Website invites users to: investigate conditions or symptoms; coordinate care; obtain information about upcoming treatments and health services; make online payments; and schedule appointments. *See id.* at ¶¶ 4, 77, 81; *see generally* CAC (referring to "patients" and those seeking medical treatment that share Private Information in the use of Defendant's Website approximately 95 times). Plaintiff's individual allegations reflect the Class she represents. Plaintiff alleges she used Defendant's Website to research symptoms, identify treatment options, pay bills, look up and call specialists (gastroenterology, OB/GYN, endocrinology, cardiology, hematology, vascular surgery), book appointments, login to the patient portal, and otherwise communicate sensitive health information. *Id.* at ¶¶ 23–24. Plaintiff's actual class definition is comprised of users disclosing their Private Information via Defendant's Website—i.e., Defendant's patients and prospective patients.

To be a class member under both the class definition and Rule 23, the individual needs to be identifiable. *Barnett v. Wal-Mart Stores, Inc.*, 133 Wash. App. 1036 (2006) ("[C]ourts have recognized that parties who seek class action certification must establish that a suitable method of identification is 'administratively feasible.'"). As Defendant states in its Opposition, "Overlake does not have the ability to 'identify' the specific individuals who visited its public

---

[2] "Private Information" is defined as "confidential personally identifiable information ('PII') and protected health information ('PHI')." *See* CAC ¶ 1; "Protected health information means individually identifiable health information …." 45 CFR § 160.103.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Website." Opp. at 17:25-27 citing Caratao Decl. ¶¶ 5–12. As such, for a class member to meet the class definition and be identifiable for class purposes, the individual must have submitted data (through a form or login credential) that Defendant can associate with that particular user to be identified. Here, the Complaint alleges that tracking technology was on the buttons on the Website that directed a user to the patient portal. CAC, ¶ 93. And Defendant has an appointment scheduler on its Website for new patients.[3] Because the Website user would have submitted a form identifying themselves through the registration process, it would be administratively feasible to identify class members.

Defendant criticizes Plaintiffs' citation to *Doe v. Christ Hospital*, 2023 WL 4757598 at *4 (S.D. Ohio 2023),[4] and the 2021 study[5] cited by Plaintiffs because those examples were confined to patients. *See* Response at 10–11. The same deficiency lies in Defendant's bashing of *In re Scripps Health Data Security Breach Litigation*, 581 F.Supp.3d 1225, 1230 (S.D. Cal.

[3] https://providers.overlakehospital.org/search?sort=networks%2Crelevance&filter=direct_book_capable%3AT&& (last visited November 7, 2025). Hereinafter, Defendant's Website will be cited as "Website."

[4] In *Christ Hospital*, Plaintiffs' data revealed that 80.3% of Defendant's patients had an Ohio residence (despite Christ Hospital's location on the border of Ohio and Kentucky). *Christ Hospital*, 2023 WL 4757598 at *4. In addition, the defendant in *Christ Hospital* was able to access and produce a different set of data on its website users. *See id.* This undermines Defendant's feigned inability to "prove or disprove the citizenship" of an individual encompassed by the class definition. Response at 12. In fact, if jurisdictional discovery is necessary (*see infra*. § II.C). Defendant can provide data on the addresses of their patients, which patients have a patient portal, which patients used the "book an appointment" feature, and the IP addresses of each website visitor, which will readily confirm that at least two-thirds (mandatory) or one-third (discretionary) of the class are Washington citizens.

[5] This study found that individuals seeking medical care travel a median of "6.6 miles, with 75 percent of distances less than 15 miles and 90 percent of distances less than 30 miles[]." *See* Mot. to Remand at 8 (quoting Agency for Healthcare Research and Quality, *Methods for Calculating Patient Travel Distance to Hospital in HCUP Data*, https://hcup-us.ahrq.gov/reports/methods/MS2021-02-Distance-toHospital.jsp#es (last visited Oct. 3, 2025) This support the inference that users coordinating care; obtaining information about upcoming treatments; making online payments; and scheduling appointments (see CAC ¶¶ 4, 77, 81) on Defendant's Website are well within the borders of Washington State.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

2022).[6] But, as described above, the class here is comprised of Defendant's patients and prospective patients, and *Scripps* and *Christ Hospital* (along with many more) support Plaintiff's argument that the vast majority of Defendant's patients, and those seeking medical services through Defendant's Website, are located near Defendant's geographical location in Washington. For example, in *Doe v. County of Santa Clara*, the court there found that the class, which included patients and prospective patients, were majority California residents given the localized provision of health care services. 2024 WL 4700635, at *2 (N.D. Cal. 2024). Similarly, in *Roberts*, the court found, "[o]f 2,686,902 individuals who had established patient portal accounts (as of the date of this action), 2,120,765 reported their state of residence as North Carolina[]" (nearly 80%) and that was enough to establish that the majority of patients effected by the pixel technology were North Carolina residents. *Roberts v. Charlotte Mecklenburg Hosp. Auth.*, 2025 WL 880538, at *4, n.2 (W.D.N.C., 2025). Finally, in *Mastro*, the patients whose data was accessed were almost all state residents, and only 11/% were non-Californians. *Mastro v. City of Hope*, 2024 WL 3891068, at *2 (C.D. Cal. 2024).

Defendant's reliance (Response at 11) on *Jones v. Tonal Systems, Inc.*, 2024 WL 400182 (S.D. Cal. Feb. 2, 2024) is inapplicable, because the defendant in *Jones* made home fitness products, which were shipped all over the country to people's homes. Unlike consumers buying products on a website, patients and prospective patients looking for medical services on Defendant's Website actually look for providers, treatments, and appointments near where they are located.

Both the mandatory and discretionary exceptions to CAFA depend on meeting certain thresholds of citizenship of the Class by a mere preponderance of the evidence, i.e., showing it is more likely than not that the thresholds have been met. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1223 (9th Cir. 2020); *In re Fred Hutchinson Data Sec. Litig.*, 2024 WL 1240681, at

---

[6] Additionally, the *Scripps* court found "[g]iven the significant cost of healthcare and patients' goal of maximizing the healthcare benefits furnished by a provider, it stands to reason that the vast majority of Scripps patients are from the San Diego or nearby area." *Id. at* 1230.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*5 (W.D. Wash. 2024). And that burden is not "exceptionally difficult" and should be "considered with the goal of CAFA in mind: to keep interstate actions in federal court and truly intrastate actions in the state courts." *In re Fred Hutchinson,* 2024 WL 1240681, at *5 (quoting *Adams*, 958 F.3d at 1223). Plaintiff has met her burden by presenting evidence that at least two-thirds (mandatory exceptions) or one-third (discretionary exceptions) of the Class are Washington citizens.

Defendant's Website lists 78 different locations, all of which are located in the Puget Sound area of Washington near Seattle. (Mot. to Remand at 3). Although Defendant asserts in response that its patients come from all over, this is contradicted by its own Website, which claims that Defendant serves 200,000 patients and covers a geographical service area in Washington spanning 977,461 people over two counties.[7] Report at 13. Defendant defines: [t]he service area for Overlake is divided into two markets . . . service areas include 26 cities or communities and an associated 44 ZIP Codes. The **service area was determined from ZIP Codes that reflect a majority of patient admissions."** Report at 6. (emphasis added). Defendant admits the majority of patient admissions are within the State of Washington, and Defendant's entire service area is within the State of Washington; far from any borders that would invite out of state neighbors looking for treatment. *Id.*

Defendant attempts to distinguish itself as more than a regional hospital, mentioning some national recognition. *See* Response at 12. However, the recognition it received is for *standard procedures*, not for travel-worthy, specialized care, as explained by U.S. News: "you may need to travel to a hospital that earned a top 50 national ranking . . . But for a common procedure or condition like a hip replacement or COPD, you are likely to find that **a hospital close to home**

---

[7] Defendant's Website contains a link to a triannual report, Community Health Needs Assessment (CHNA), created by Defendant to meet a requirement for tax-exempt Hospitals, which will be referred to as "Report" or "Defendant's Report." Linked here: https://www.overlakehospital.org/about/community-benefit.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

is highly rated by U.S. News."[8] In other words, the accolades received do not evidence that Defendant's hospital is the kind of hospital that patients will travel to for specialized treatment.

Despite claiming it has patients from other states,[9] Defendant glaringly fails to assert that even a third of its patient base is out of state – because it cannot. *See* Response at 12. *See Singh v. IQ Data*, No. C22-418RSM, 2022 WL 5133744, at *3 (W.D. Wash. Oct. 5, 2022) ("[defendant] is asking the Court to suspend common sense and to assume that a substantial portion of class members left the state or lack citizenship, contrary to what the submitted data demonstrates."). All evidence indicates that Defendant's patient population, and thus Class Members, are overwhelmingly domiciled in Washington.

**2. <u>The Mandatory Exception Applies</u>**

The Court may "extrapolate[] from the available data" in determining whether two-thirds of the class are Washington residents. *Setters v. Journey Lite of Cincinnati, LLC*, 2017 WL 510270, at *3 (S.D. Ohio Feb. 8, 2017); *see also Mastro*, 2024 WL 3891068 at *2 ("a court may make reasonable inferences from facts in evidence" and "consider the entire record."). In *Doe v. County of Santa Clara* the class contained similar boundaries of the Class, and the court found that the allegations in the Complaint paired with the "plausible inferences regarding a class of patients and prospective patients of medical centers in one California county … support application of the home state exception." 2024 WL 4700635, at *2. Here, the class contains patients and those seeking medical care from Defendant, and Defendant has locations within *two* counties in Washington. Plaintiff has met her burden and shown that the class is made up of at least two-thirds Washington citizens based on: Defendant's admissions that the majority of patient's derive from the local service area; the localized nature of Defendant's services;

---

[8] Dagg Decl. at ¶ 6; Website (referencing and linking U.S. News, https://health.usnews.com/best-hospitals/articles/understanding-the-best-hospitals-awards (last visited November 5, 2025) (emphasis added).

[9] If Defendant wants to introduce this evidence as a basis for showing that its patient population goes beyond Washington, it merely invites the Court to permit discovery into its full patient population so as to make a more informed decision about whether the CAFA exceptions apply. *See, supra* § II.C.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant's local community-oriented marketing; and survey data reflecting the geographical limits of patients traveling for services.[10]

### 3. <u>The Discretionary Exception Applies</u>

Given Plaintiff's contention that two-thirds of the class are Washington residents, it also argues for the discretionary exception that at least one-third are Washington residents. *See* Supra, § II.A.1. The factors weigh heavily in Plaintiff's favor.

***28 U.S.C. § 1332(d)(3)(A):*** Defendant first attempts to assert national interest because the class includes the phrase "United States." This same argument was rejected in *Rosario v. PIH Health, Inc.*, 2024 WL 4655362 (C.D. Cal. 2024), where the court found the data breach occurred in the State of California and affected California residents, so the class definition including "United States" does not automatically make a national matter. *Id.* at * 6. This is a Washington matter, involving Washington patients, disclosing private and sensitive information to a Washington hospital—not a matter of national importance.[11] *See* Mot. to Remand at 9.

***28 U.S.C. § 1332(d)(3)(B):*** Defendant is grasping when it tries to assert that resolution of Plaintiff's *exclusively* state law claims requires interpretation of federal law—namely HIPAA. *See* Response at 14–15. In other hospital tracking cases, state courts across the country hear these cases without interpretation of HIPAA. *See, e.g., Rodriguez v. FastMed Urgent Care, Inc.*, 2025 WL 916910 (N.C. Super. Mar. 25, 2025); *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403 (Del. Super. Apr. 4, 2025). Just because the Complaint mentions HIPAA does not make HIPAA central to the case. *See In re Anthem, Inc.*, 129 F. Supp. 3d 887 (N.D. Cal. 2015) (denying federal

---

[10] Defendant's reliance on *Hooks v. Dignity Health*, No. CV 22-07699 DSF (PDx), 2022 WL 17968833, at *2 (C.D. Cal. Dec. 27, 2022) is inapplicable, because there, the defendant contained numerous locations spread across three States, and the plaintiffs tried to extrapolate the patient citizenship based on the population of each State. *Id.*

[11] Defendant's citation to *Henry v. Warner Music Group Corp.*, 2014 WL 1224575, at *7 (S.D.N.Y. Mar. 24, 2014), is unavailing because there the court took into account the broad impact the case would have on the legal classification of a major labor market in the United States. No such similar issue is tied to this case.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

jurisdiction based on references to HIPAA). Plaintiff's claims are based on Washington law, and mention of HIPAA in the Complaint does not change that.[12] *See* Mot. to Remand at 9.

***28 U.S.C. § 1332(d)(3)(C):*** Plaintiff filed in State Court not to avoid Federal jurisdiction, but because Plaintiff's federal claims were dismissed, destroying federal question jurisdiction. *See, infra*, § II.B.

***28 U.S.C. § 1332(d)(3)(D):*** Defendant once again uses the false Class definition to state there is no forum nexus and implies there would be a nexus if the conduct included Overlake patients. *See* Response at 15. Because the conduct ***does*** include Overlake patients and prospective patients, this factor weighs in on Plaintiff's side.

***28 U.S.C. § 1332(d)(3)(E):*** As discussed above, the overwhelming majority of class members are Washington citizens and Defendant has not provided any evidence to the contrary. *See Cortez v. McClatchy Newspapers, Inc.*, 2016 WL 3181200, at *5 (E.D. Cal. June 7, 2016) (recognizing that "common sense" suggests that more than two thirds of class of purchasers of California newspaper in California would be citizens of California).[13]

***28 U.S.C. § 1332(d)(3)(F):*** Defendant fails to distinguish *Vodenichar v. Halcon Energy Properties, Inc.*, 733 F.3d 497 (3d Cir. 2013). In a case analyzing *Vodenichar*, the court emphasized CAFA jurisdiction was about controlling and consolidating class actions in a single forum. *See Erie Ins. Exchange by Stephenson v. Erie Indem. Co.*, 68 F.4th 815, 822 (3d Cir. 2023). However, dismissal of a prior action "did not implicate Congress's policy concern because it was 'not a copycat situation where the defendants face similar class claims brought by different named plaintiffs and different counsel in different forums.'" *Id.* (quoting *Vodenichar*, 733 F.3d

---

[12] Defendant cites *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011), for support, but that case found that the state law claims were preempted by a federal statute—the Medicare Act..

[13] The cases cited by Defendant (*In re Blackbaud, Inc.*, 2021 WL 1940581, at *7 (D.S.C. May 14, 2021 and *Dutcher v. Matheson*, 16 F. Supp. 3d 1327, 1339 (D. Utah 2014) on this point are not persuasive because the courts in those cases weighed other factors heavily in favor, including the presence of national-interest issues.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

at 509). Similarly, the policy concern is not applicable here, because Plaintiff dismissed and refiled in a different forum based on the elimination of federal claims, and the class claims remain for the same Plaintiff and same counsel.[14]

The factors all weigh in Plaintiff's favor. Even if one or two factors are contrary, not any one factor governs. *Rosario*, 2024 WL 4655362, at *7 ("When considered collectively and balanced, the six factors identified in § 1332(d)(3) weigh in favor of applying the discretionary home state exception and declining federal jurisdiction." (citing *Adams*, 958 F.3d at 1220)). Considered collectively, and balancing the interests of the State and the policy concerns of Congress, the discretionary exception applies, and this case should be remanded.

### B. The Principle of Judicial Estoppel Does Not Warrant Denial of Plaintiff's Motion to Remand

Defendant contends that Plaintiff should be estopped from arguing that there is not CAFA jurisdiction because Plaintiff originally alleged that there was CAFA jurisdiction in her original federal complaint. But Plaintiff is not arguing that the Court lacks CAFA jurisdiction—only that it should abstain from exercising that jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1022 (9th Cir. 2007) ("Implicit in both subsections (d)(3) and (d)(4) is that the court has jurisdiction, but the court either may or must decline to exercise such jurisdiction."); *Adams*, 958 F.3d at 1223 ("The … exceptions are not jurisdictional. Rather, … we treat the local controversy and home state exceptions as a form of abstention.") (internal citation omitted). Therefore, Plaintiff's original federal court complaint alleging CAFA jurisdiction is not inconsistent with Plaintiff's instant motion for remand.

---

[14] Defendant's cited case, *Alvarez v. XPO Logistics Cartage, LLC*, 2018 WL 3203086 (C.D. Cal., 2018) , actually supports Plaintiff's position, because the facts there concerned two different plaintiffs, which does fall into the policy concern, and the two other cases that Defendant cites, *Dutcher v. Matheson*, 16 F.Supp.3d 1327 (D. Utah, 2014) and *Garcia v. Central Coast Restaurants, Inc.*, 2018 WL 6267829 (N.D. Cal., 2018) only mention this factor in passing, and do not discuss what constitutes an "other class action."



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Defendant's collateral estoppel argument also fails because Plaintiff did not "successfully persuade[] the court" in the previous action that it should exercise CAFA jurisdiction. *See U.S. v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008). Plaintiff merely made an allegation that there was federal jurisdiction on the basis of CAFA and federal question. Plaintiff made no further arguments regarding jurisdiction. *See* Second Am. Compl., *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, ¶ 65 ("This Court has federal question jurisdiction under 28 U.S.C. § 1331 because this Complaint alleges question of federal laws under the ECPA (18 U.S.C. § 2511, et seq., and 28 U.S.C. § 2702) and the CFAA [sic] (18 U.S.C. § 1030, et seq)"). Once Plaintiff's federal claim was dismissed, Plaintiff dismissed the case rather than maintain that the Court should exercise jurisdiction over the remaining state law claims, out of concern for the viability of those arguments. Defendant's contention that this Court has been "successfully persuaded" of CAFA jurisdiction ignores that the matter was not raised, argued or decided.

### C. In the Alternative, the Court Should Permit Limited Discovery to Determine the Citizenship of the Prospective Class

If the Court finds that Plaintiff has not set forth sufficient evidence to satisfy the mandatory or discretionary exceptions to CAFA, then she should be permitted to conduct jurisdictional discovery. *King v. Great American Chicken Corp., Inc.*, 903 F.3d 875 (2018) and *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 883 (9th Cir. 2013).

Defendant tries to distinguish cases like *Mondragon* and *King* (along with others cited in the motion) by arguing that jurisdictional discovery related to Overlake "would be futile because the ability to prove or disprove the citizenship or continual residency of visitors to Overlake's Website is not possible." Response at 17. But this relies on the faulty premise that the putative class is comprised of just Website visitors. As Plaintiffs has explained, any Class Member must be identifiable. Therefore, if certain visitors of Defendant's Website cannot be identified through discovery about Defendant's use of tracking tools on its Website, they are not class members. For those that are identifiable, Defendant—a medical provider—will have information about its



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

patients' residency. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (quoting *Anderson v. Watts*, 138 U.S. 694, 706 (1891)) ("longstanding principle that '[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary.'").

Defendant compares this case to *Hicks v. Grimmway Enterprises, Inc.*, No. 22-CV-2038, 2023 WL 3319362 (S.D. Cal. May 9, 2023), in which the defendant persuasively asserted that it "does not regularly collect the information sought," including the identity of end-consumers. *Id.* at *13–14. In contrast, Overlake *did* collect (and then disclose) the personally identifiable information of *all* class members.[15]

Defendant's mistaken reliance on *Jones*, 2024 WL 400182, a case involving the use of a consumer product website's chat feature, is misplaced because the data sought there was unable to ascertain domicile. *See id.* at *3–4. By contrast, here, Defendant's own data is sufficient to prove class citizenry, it does not require only relying only on IP addresses, and residential addresses are a better indicator of domicile than consumer mailing addresses because a consumer purchasing a product may seek to have a product shipped somewhere other than their residence. Defendant by definition, possesses the information about individuals who are patient portal users or have submitted personally identifiable information data through its Website.

Lastly, Defendant makes the cursory argument that Plaintiff fails to demonstrate any actual or substantial prejudice in the absence of discovery. Response at 19. However, as discussed above, this information is in Defendant's possession. As such, Plaintiff is hamstrung from pointing to evidence for purposes of fully proving whether the CAFA exceptions apply without limited jurisdictional discovery. If the Court finds that it lacks the necessary information to reach a decision, the requested discovery will provide that answer. As Defendant's citation to *Arizona v. Mayorkas*, 600 F. Supp. 3d 994 (D. Ariz. 2022) explains, prejudice occurs when the outcome

---

[15] As explained above, (*supra* at n. 4) Defendant has the information necessary to readily answer the question of class member citizenship, but to the extent Defendant no longer maintains that data, if granted limited discovery, Plaintiff can utilize subpoenas to third parties who received the class members' Private Information.



TOUSLEY BRAIN STEPHENS PLLC
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of a jurisdictional motion would depend on the discovery requested. Therefore, Plaintiff's motion should not be denied without an opportunity to conduct discovery.

## III. CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court remand this action to state court, or in the alternative, that it permit jurisdictional discovery.

DATED this 10th day of November, 2025.

*I certify that the foregoing memorandum contains 4,137 words in compliance with the Local Civil Rules.*

**TOUSLEY BRAIN STEPHENS PLLC**

By: *s/ Jason T. Dennett*
Jason T. Dennett, WSBA #36080
Rebecca L. Solomon, WSBA #51520
1200 Fifth Avenue, Suite 1700
Seattle, Washington 98101
Telephone: (206) 682-5600
Facsimile: (206) 682-2992
*jdennett@tousley.com*
*rsolomon@tousley.com*

Terence R. Coates (*pro hac* forthcoming)
Dylan J. Gould (*pro hac* forthcoming)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 E. Court St., Ste. 530
Cincinnati, Ohio 4502
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*tcoates@msdlegal.com*
*dgould@msdlegal.com*

Gary M. Klinger (*pro hac* forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
*gklinger@milberg.com*

Alexandra M. Honeycutt (pro hac forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (866) 252-0878
Facsimile: (865) 522-0049
*ahoneycutt@milberg.com*

Joseph M. Lyon (pro hac forthcoming)
Clint Watson (pro hac forthcoming)
**THE LYON FIRM**
2754 Erie Ave.
Cincinnati, Ohio 45208
Telephone: (513) 381-2333
Facsimile: (513) 766-9011
*jlyon@thelyonfirm.com*
*cwatson@thelyonfirm.com*

Bryan L. Bleichner (*pro hac* forthcoming)
Philip J. Krzeski (*pro hac* forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, Minnesota 55401
Telephone: (612) 339-7300
Facsimile: (612) 336-2940
*bbleichner@chestnutcambronne.com*
*pkrzeski@chestnutcambronne.com*

***Counsel for Plaintiff and the Putative Class***