HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JANE DOE, on behalf of herself and all others similarly situated,<br><br>        Plaintiffs,<br><br>     v.<br><br>OVERLAKE HOSPITAL MEDICAL CENTER,<br><br>        Defendant. | CASE NO. 2:25-cv-01711-RAJ<br><br>ORDER |

## I.      INTRODUCTION

THIS MATTER comes before the Court on Plaintiff's Motion to Remand and for Leave to Conduct Discovery, Dkt. # 13.   The Court has reviewed the motion, the submissions in support of and in opposition to the motion, and the balance of the record.

Plaintiff brings this putative class action against Defendant Overlake Hospital Medical Center ("Overlake") for allegedly disclosing Plaintiff's and putative class members' Private Information to third parties, including Meta and Google, through its use of website tracking tools.  Overlake is a Washington-based hospital system.  Plaintiff asks the Court to remand this case to state court under the Class Action Fairness Act's ("CAFA") home state exception.  Under the exception, the Court "must" remand the case

ORDER – 1

if at least two-thirds of the putative class, and Overlake, are Washington citizens. The Court "may" remand the case if at least one-third of the putative class, and Overlake, are Washington citizens, and after consideration of certain enumerated factors. Because Plaintiff fails to provide sufficient evidence to meet her burden of proof as to putative class members' citizenship, her motion to remand is **DENIED** without prejudice. Plaintiff's alternative request for leave to conduct jurisdictional discovery is **GRANTED**.

## II.    BACKGROUND

### A.    *Nienaber* Action

Plaintiff filed an earlier action against Overlake challenging substantially similar conduct in the case captioned *Nienaber v. Overlake Hospital Medical Center*, 23-cv-1159. Dkt. # 18-1. That case was filed in this district and assigned to the Honorable Tana Lin. *Id.* In *Nienaber*, Plaintiff asserted claims under the Electronic Communications Privacy Act ("ECPA"), the Computer Fraud and Abuse Act ("CFAA"), and several state law claims. *Id.* ¶¶ 154–276. The *Nienaber* complaint stated the court had subject matter jurisdiction over the matter based on both federal question jurisdiction, under 28 U.S.C. § 1331, and CAFA jurisdiction, under 28 U.S.C. § 1332(d). *Id.* ¶¶ 46–47; Dkt. 18-2 ¶¶ 64–65. Over the course of multiple rounds of amendments to the complaint and motions to dismiss, Plaintiff voluntarily dismissed her CFAA claim and Judge Lin dismissed Plaintiff's ECPA claim without leave to amend. *See* Dkt. 18-2; *Nienaber v. Overlake Hospital Med. Ctr.*, No. 23-cv-1159, 2025 WL 692097, at *16 (W.D. Wash. Mar. 4, 2025). Thus, there were no federal claims remaining in the case. Plaintiff then voluntarily dismissed the *Nienaber* case and filed this action in King County Superior Court. Dkt. # 1-5. Overlake removed the action to this Court. Dkt. # 1.

The parties dispute Plaintiff's reason for voluntarily dismissing the *Nienaber* case. Plaintiff explains that "[b]ecause Plaintiff's only claim involving a federal statute was dismissed, Plaintiff believed there would not be subject matter jurisdiction due to lack of a federal question." Dkt. # 13 at 2. Overlake, on the other hand, argues Plaintiff dismissed

ORDER – 2

*Nienaber* "after receiving unfavorable rulings on Overlake's motions to dismiss" and that she filed this case in state court in a "transparent effort to evade this Court's jurisdiction and engage in forum shopping." Dkt. # 17 at 2.

### B.      Allegations in Class Action Complaint

Overlake is a nonprofit healthcare organization headquartered in Bellevue, Washington. Dkt. # 1-5 ¶ 38. Plaintiff is a current patient at Overlake. *Id.* ¶ 19. According to the Class Action Complaint ("Complaint"), Overlake owns and controls its website, related webpages, and an app called MyChart to connect its patients with a patient portal (collectively referred to in the Complaint as "Web Properties."). *Id.* at 2. Overlake "offers healthcare to its patients via its Web Properties." *Id.* ¶ 2. "These Web Properties also allow patients to connect with doctors and other healthcare services including paying bills, searching for providers, booking appointments, and logging in to Overlake's MyChart Patient Portal." *Id.* Plaintiff alleges that Overlake installed and used certain tracking technologies such as the Meta Pixel, Google Tag Manager, and Google Analytics tools, and that these tracking technologies "effectively planted a bug on Plaintiff's and Class Members' web browsers and devices, which caused their communications to be intercepted, accessed, viewed and captured by third parties in real time, as they were communicated by patients, based on Overlake's chosen parameters." *Id.* ¶¶ 6–8. Plaintiff alleges that the "Private Information that was shared and disclosed included medical conditions, symptoms, treatments, and other information that was provided to Defendant pursuant to a confidential hospital-patient relationship." *Id.* ¶ 1.

### III.  LEGAL STANDARD

CAFA vests federal district courts with original jurisdiction over certain class actions if "(1) the aggregate amount in controversy exceeds $5,000,000, and (2) any class member is a citizen of a state different from any defendant." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020–21 (9th Cir. 2007) (citing 28 U.S.C. § 1332(d)(2)). "Once CAFA jurisdiction has been established, *see* U.S.C. § 1332(d)(2) and (d)(5), the burden falls on

ORDER – 3

the party seeking remand . . . to show that an exception to CAFA jurisdiction applies." *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020). "A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard." *Mondragon v. Capital One Auto Finance*, 736 F.3d 880, 884 (9th Cir. 2013).

## IV.  DISCUSSION

### A.     Judicial Estoppel

Overlake first argues the Court should decline to consider Plaintiff's motion to remand under the doctrine of judicial estoppel. Dkt. # 17 at 7–9. According to Overlake, Plaintiff "affirmatively relied on CAFA to remain in federal court" in the *Neinaber* action, and should be judicially estopped from now seeking remand. *Id.* at 2. The Court disagrees.

"Judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). The doctrine "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). In determining whether to apply the  judicial estoppel doctrine, courts consider: "(1) whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Ibrahim*, 522 F.3d 1003, 1009 (quoting *New Hampshire*, 532 U.S. at 750–51). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases." *Hamilton*, 270 F.3d at 783.

Under the first factor, Plaintiff's motion to remand does not take a "clearly inconsistent" position as Plaintiff took in *Neinaber*. In *Neinaber*, Plaintiff asserted subject matter jurisdiction based on federal question jurisdiction and CAFA jurisdiction. Dkt. #

ORDER – 4

18-1 ¶¶ 46–47; Dkt. # 18-2 ¶¶ 64–65. As to CAFA jurisdiction, Plaintiff alleged that the requirements of 28 U.S.C. § 1332(d)(2) were satisfied because "this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class[] is a citizen of a state different from Defendant." *Id.* 18-1 ¶ 47; # 18-2 ¶ 65. Plaintiff never took any position as to whether a CAFA exception applied to the case. Whether a court has CAFA jurisdiction and whether a CAFA exception applies are distinct issues. The former relates to the court's original jurisdiction, while the latter is not jurisdictional but rather a form of abstention. *See Serrano*, 478 F.3d at 1022 ("Implicit in both subsections (d)(3) and (d)(4) is that the court has jurisdiction, but the court either may or must decline to exercise such jurisdiction."); *Adams*, 958 F.3d at 1223 ("The local controversy and home state exceptions are not jurisdictional. . . Rather . . . we treat the local controversy and home state exceptions as a form of abstention."). As in *Neinaber*, Plaintiff still maintains in this case that the § 1332(d)(2) requirements for CAFA jurisdiction are met. *See* Dkt. # 23 at 2 (Plaintiff readily concedes that this Court possesses CAFA jurisdiction based on minimal diversity). Her position now is that the home state exception—an issue never raised in *Neinaber*—supports remand. The Court does not find that Plaintiff's previous position that CAFA jurisdiction existed is "clearly inconsistent" with her current position that a CAFA exception applies.

Under the second factor, Plaintiff did not successfully persuade the *Neinaber* court of her earlier position. The Ninth Circuit has "restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton,* 270 F.3d at 783. It appears that the parties never litigated the issue of subject matter jurisdiction in *Neinaber*, and thus the *Neinaber* court never made any findings as to whether CAFA jurisdiction existed or whether a CAFA exception applied to the case. Overlake argues that "[f]or the purposes of judicial estoppel, our circuit does not require that the prior court explicitly adjudicate an issue—but merely 'accept[]' a party's previous

ORDER – 5

position." Dkt. # 17 at 8 (quoting *Azod v. Robinson*, No. 22-56186, 2024 WL 163371, at *2 (9th Cir. 2024)). In *Azod*, the Ninth Circuit found that in the parties' first district court case, the court, by presiding over the case, "necessarily" accepted or relied on the appellants' representation that the case was filed in the appropriate forum. *Azod*, 2024 WL 163371, at *2. Thus, it was appropriate to judicially estop the appellants from asserting an inconsistent position in a later case. *Id.* Here, in contrast, Plaintiff at all relevant times in *Neinaber* asserted both federal question jurisdiction and CAFA jurisdiction. Thus, by presiding over the case, the *Neinaber* court did not "necessarily" make any determination regarding CAFA jurisdiction, much less any determination regarding whether a CAFA exception applied. Rather, the court may have proceeded with the case based entirely on federal question jurisdiction.

Under the third factor, because the Court finds that Plaintiff is not taking an inconsistent position, it does not find that "allowing the inconsistent position would allow [Plaintiff] to 'derive an unfair advantage or impose an unfair detriment" on Overlake. *Ibrahim*, 522 F.3d at 1009. In any case, the parties dispute Plaintiff's reason for voluntarily dismissing the *Neinaber* action. Plaintiff represents she did so because after dismissal of her federal claims, she believed that subject matter jurisdiction may be lacking. Dkt. # 13 at 2. Overlake, on the other hand, sees Plaintiff's actions as motivated by forum shopping after unfavorable decisions from the *Neinaber* court. Dkt. # 17 at 2. In light of the competing perspectives, the Court finds that at most this factor is neutral and cannot overcome the other two factors weighing against judicial estoppel.

Overall, while it is somewhat troubling that Plaintiff previously filed a highly similar action in federal court and now seeks to proceed with this case in state court, the Court finds it significant that she dismissed the prior action shortly after dismissal of all federal claims. While there are multiple interpretations for Plaintiff's actions, Plaintiff's version of events is at least plausible: after the *Neinaber* court dismissed her federal claims, she did not believe she could proceed in federal court based on CAFA jurisdiction alone.

ORDER – 6

Under these facts, the Court does not find that Plaintiff is taking a clearly inconsistent position in this case, and declines to apply the judicial estoppel doctrine.

### B.     Homes State Exemption

Next, Plaintiff argues the Court should remand this case based on either the mandatory home state exception under 28 U.S.C. § 1332(d)(4)(B) or the discretionary home state exception under 28 U.S.C. § 1332(d)(3).  The Court finds that Plaintiff has failed to meet her burden of proof for either exception.

#### i.     Overlake's Surreply

As an initial matter, Overlake filed a surreply asking the Court to strike two arguments made in Plaintiff's reply brief.  First, Overlake seeks to strike Plaintiff's argument that "the putative class is limited to 'patients'" because this position is "inconsistent with the putative class definition in the complaint." Dkt. # 25 at 1.  Second, Overlake seeks to strike Plaintiff's argument that the "[CAFA] mandatory exception applies to this action" because, according to Overlake, Plaintiff conceded in her reply brief that the mandatory exception does not apply. *Id.* at 1–2.  The Court finds that Overlake's surreply merely contains additional legal arguments and does not advance any valid basis to strike the challenged portions of Plaintiff's reply brief.  Accordingly, the request is denied.

#### ii.    Class Definition

Next, before analyzing whether Plaintiff has met her burden of demonstrating that the putative class has the requisite proportion of Washington residents, the Court must first determine the scope of the proposed class.  The Complaint defines the proposed class as: "All individuals residing in the United States whose Private Information was disclosed to a third party without authorization or consent as a result of using Defendant's Website." Dkt. # 1-5 ¶ 122.  The parties dispute the scope of the proposed class.  Plaintiff argues that the "actual class definition is comprised of users disclosing their Private Information via Defendant's Website—i.e., Defendant's patients and prospective patients." Dkt. # 23 at 3.

ORDER – 7

According to Plaintiff, because the class definition includes only individuals "whose Private Information was disclosed," the class members must be identifiable, and thus "the proposed class necessarily relates to patients who have used Defendant's Website and are capable of being identified—not just any Website visitor." *Id.* at 1–2.  In contrast, Overlake points out that the actual definition of the proposed class includes "all individuals" and is not limited to patients.  Dkt. # 17 at 3.  Overlake argues that as a result, the putative class may include anyone who visited Overlake's Website, including "nursing and college students, referring providers, job seekers and candidates, vendors, payors, professionals temporarily residing in Washington for work, prospective patients, friends and family members of patients, employees, competitors, researchers, academic scholars, and individuals traveling from neighboring states to access Overlake's services." *Id.*

The parties' differing interpretations of the proposed class is significant to their present dispute.  As a Washington-based hospital system, it is likely that a significant portion of Overlake's patients and prospective patients are Washington residents. Overlake's interpretation, however, pulls into the proposed class many categories of potentially out-of-state individuals.  Moreover, Overlake argues "[i]t is not possible for Overlake—or any party—to determine the citizenship of individuals who merely visited Overlake's public website," and therefore jurisdictional discovery under Overlake's interpretation of the proposed class would be futile.  *Id.*

The Court adopts Plaintiff's position that the proposed class is limited to Overlake's "patients and prospective patients."  Dkt. # 23 at 3.  It is true that the proposed class, as defined in the Complaint, is broad and not necessarily limited to patients or prospective patients.  However, based on the Complaint allegations and the alleged manner in which the tracking technologies capture Private Information, it appears that the alleged conduct primarily, if not exclusively, affects Overlake's patient population.  *See, e.g.*, Dkt. # 1-5 ¶ 1 ("Private Information that was shared and disclosed included medical conditions, symptoms, treatments, and other information that was provided to Defendant *pursuant to*

ORDER – 8

*a confidential hospital-patient relationship*.") (emphasis added); *id.* ¶ 2 ("Defendant offers healthcare to its *patients* via its Web Properties.") (emphasis added); *id.* ¶ 6 (tracking technologies "caused their communications to be intercepted, accessed, viewed and captured by third parties in real time, as they were communicated *by patients*, based on Overlake's chosen parameters.") (emphasis added).    More significantly, Plaintiffs affirmatively state in their briefing that the proposed class is limited to "patients and prospective patients." Dkt. # 23 at 3.   District courts "generally agree that plaintiffs may *narrow* the class definition without seeking leave to amend." *Coppel v. SeaWorld Parks & Entm't, Inc.*, 347 F.R.D. 338, 350 (S.D. Cal. 2024) (quoting *Hawkins v. Kroger Co.*, 337 F.R.D. 518, 526 (S.D. Cal. 2020)) (emphasis in original).   While typically plaintiffs propose narrowing the class definition at the class certification stage, the Court sees no reason that Plaintiff should be precluded from clarifying and narrowing the proposed class definition now in a manner that is consistent with the Complaint's allegations.   To the extent Plaintiff later seeks to take an inconsistent position, Overlake may raise the doctrine of judicial estoppel.

### iii.    Evidence Regarding Citizenship of Proposed Class

CAFA was "intended to strongly favor federal jurisdiction over *inter*state class actions." *Adams*, 958 F.3d at 1220 (quoting *King v. Great Am. Chicken Corp., Inc.*, 903 F.3d 875, 878 (9th Cir. 2018)) (emphasis in original).   "Congress provided exceptions to CAFA jurisdiction, however, to allow truly *intra*state class actions to be heard in state court." *Id.* (emphasis in original).   At issue in this case is the home state exception to CAFA jurisdiction.   "The home state exception accords two bases for remand:   one mandatory and the other within the district court's discretion." *Id.*   Under the mandatory exception, the district court "shall" decline to exercise jurisdiction if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).   Under the discretionary exception, after consideration of six enumerated

ORDER – 9

factors, the district court "may, in the interest of justice and looking at the totality of the circumstances, decline to exercise jurisdiction" if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(3).

"Citizenship is determined 'as of the date the case became removable[.]" *Adams*, 958 F.3d at 1221 (quoting *Mondragon*, 736 F.3d at 883). "To be a citizen of a state, a natural person must first be a citizen of the United States . . . [Her] state citizenship is then determined by her state of domicile[.]" *Id.* (quoting *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). Domicile is where the individual resides "with the intention to remain or to which she intends to return." *Id.* (quoting *Kanter*, 265 F.3d at 857). Thus, an individual's place of residence is not synonymous with the individual's domicile or citizenship.[1] However, although the Ninth Circuit has not squarely reached the issue, it has noted that "numerous courts treat a person's residence as prima facie evidence of the person's domicile." *Mondragon*, 736 F.3d at 886. In determining whether a CAFA exception applies, "district courts are permitted to make reasonable inferences from facts in evidence." *Id.*

The Ninth Circuit has been clear, however, that for purposes of applying a CAFA exception, "there must ordinarily be facts in evidence to support a finding" regarding the citizenship of proposed class members "if that question is disputed before the district court." *Id.* at 881. Unless the proposed class is specifically defined as limited to citizens of the state in question, "pure inference" or "guesswork" about the citizenship of proposed class members is inappropriate. *Id.* Remand cannot be based "simply on a plaintiff's allegations, when they are challenged by the defendant." *Id.* at 884. This is true even if

---

[1] For example, someone could reside in Washington but not intend to remain there (that person resides in Washington but is not domiciled in Washington and is not a Washington citizen). Someone could reside in Washington, intend to remain there, but not be a U.S. citizen (that person resides in Washington, is domiciled in Washington, but is not a Washington citizen).

ORDER – 10

common sense suggests that the requisite citizenship threshold is met. *See id.* "Sensible guesswork, based on a sense of how the world works" is "guesswork nonetheless" *Id.* (quoting *In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010)).

For example, *Mondragon* involved a putative class of "consumers who purchased and registered cars in California." *Id.* at 883. The Ninth Circuit found that without actual evidence of the proposed class members' citizenship, it was improper for the district court to find, based on the class allegation alone, that two-thirds of the class were California citizens. *Id.* at 881–82. This was true even though the Ninth Circuit believed "[i]t is likely that most of the prospective class members—we would guess more than two-thirds of them—were California citizens at the time the lawsuit was filed." *Id.* at 884; *see also Naki v. Hawai'i*, No. 23-cv-435, 2024 WL 4456803, at *10 (D. Haw. Apr. 5, 2024) ("And while it is entirely possible—and perhaps even likely—that greater than two-thirds of the proposed class are citizens of Hawai'i, just saying so isn't enough."); *Hooks v. Dignity Health*, No. 22-cv-7699, 2022 WL 17968833, at *2 (C.D. Cal. Dec. 27, 2022) (finding that although website printouts of health care provider's locations "might provide logical guesses about how prevalent California citizens may be in the class, it is insufficient."); *Jones v. Tonal Sys., Inc.*, No. 23-cv-1267, 2024 WL 400182, at *2 (S.D. Cal. Feb. 2, 2024) ("Plaintiff makes a sensible inference, but the factual contents of her Complaint and motion to remand are less extensive than what Ninth Circuit precedents require for her to meet her burden under the home-state controversy exception.").

Here, Plaintiff has not met her burden of proving, by a preponderance of the evidence, that either the mandatory or discretionary home state exception applies in this case. Plaintiff's evidence in support of remand includes Overlake's locations (all located in Washington and not near the state border), a study regarding the "median straight-line patient-hospital travel distance," and representations on Overlake's website that it serves the Puget Sound area. Dkt. # 13 at 3–4, 7–8. Plaintiff offers no evidence regarding the citizenship, or even residence, of any proposed class members. Thus, Plaintiff is asking

ORDER – 11

the Court to engage in the type of "guesswork" expressly prohibited by Ninth Circuit precedent. Like in the cases discussed above, although it likely that two-thirds, or at minimum one-third, of the proposed class members are Washington citizens, the Court is not at liberty to make this inference without any actual evidence about the proposed class members. Accordingly, Plaintiff's motion to remand is denied.

### C.   Jurisdictional Discovery

The trial court has "broad discretion to permit or deny discovery." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). Jurisdictional discovery should "ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Id.* (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). A court may deny jurisdiction discovery if "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th 2003).

Here, the Court finds that jurisdictional discovery will assist the parties and the Court to resolve whether the CAFA home state exception applies in this case. Overlake's opposition to jurisdictional discovery is premised on its argument that under its broad interpretation of the proposed class definition, "[j]urisdictional discovery would be futile because the ability to prove or disprove the citizenship or continual residency of visitors to Overlake's Website is not possible." Dkt. # 17 at 17. As discussed above, however, the Court adopts Plaintiff's position that the proposed class is limited to Overlake's patients and prospective patients. Based on this limited proposed class definition, the Court does not find jurisdictional discovery would be futile. Accordingly, the Court grants leave for Plaintiff to conduct jurisdictional discovery. [2]

---

[2] The parties are reminded that in lieu of discovery, they have the option to enter an appropriate stipulation to resolve this matter. *See King*, 903 F.3d at 881 ("If [defendant] complains that the burden placed on it is too onerous, it is free to propose a stipulation that would better address [plaintiff's] burden.").

ORDER – 12

## V.   CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Remand and for Leave to Conduct Discovery, Dkt. # 13.  Plaintiff's motion to remand is **DENIED** without prejudice.  Plaintiff's request for leave to conduct jurisdictional discovery is **GRANTED**.  The parties shall meet and confer regarding a joint discovery plan, including the scope of jurisdictional discovery, the deadline to file any discovery-related motions, and the deadline to complete jurisdictional discovery.  By no later than **July 10, 2026**, (1) if the parties agree on a joint discovery plan, the parties shall file a joint status report regarding the joint discovery plan or (2) if the parties do not agree on a joint discovery plan, Plaintiff may file a motion to compel discovery.  After completion of jurisdictional discovery, Plaintiff may file a renewed motion to remand.

Dated this 9th day of June, 2026.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 13